[Crim. No. 7844. Third Dist. Apr. 29, 1975.]

In re CHARLES R. BECKER on Habeas Corpus.

**COUNSEL**

Loren Graham, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, and Paul H. Dobson, Deputy Attorney General, for Respondent.

**OPINION**

**JANES, J.**—Petitioner, reimprisoned on charges of parole violation, seeks a writ of habeas corpus on the ground that the revocation of his parole did not conform to the requirements set forth in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]. He charges specifically that the Adult Authority's failure to accord him a prerevocation hearing violated minimum standards of due process.

FACTS

The petition, return and replication disclose the following controlling facts: on December 17, 1964, petitioner was convicted in Orange County Superior Court of violation of Penal Code section 288 and was sentenced to state prison for the term prescribed by law. He was released on parole[1] from the California Men's Colony at San Luis Obispo on August 2, 1973. The relevant conditions of petitioner's most recent parole agreement were that he totally abstain from the use of any alcoholic beverages (Condition 1); that he obey all laws (Condition 11); and that he refrain from engaging in assaultive activities and violence (Condition 12).

On December 7, 1973, petitioner was arrested in Belmont, San Mateo County, California, for violation of Vehicle Code section 23102 (misdemeanor drunk driving). According to the report of the arresting officer, petitioner was advised of his *Miranda* rights and his rights under the Implied Consent Law (Veh. Code, § 13353) and was taken to the San Mateo County jail. He chose to submit to a urine test. Upon arrival at the jail, the arresting officer was told that a doctor was on the way and would

---

[1]Petitioner had three earlier releases on parole—in 1968, 1969, and 1971. In each instance, following violation of one or more of his parole conditions, parole was revoked and petitioner was returned to prison. This pattern was properly given some weight by the Adult Authority in arriving at the present disposition. (See *In re Martinez* (1970) 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734]; *In re Moore* (1975) 45 Cal.App.3d 285 [119 Cal.Rptr. 356].)

be arriving in a few minutes. Approximately 35 minutes later petitioner informed the officer that he had to urinate. He was told that since he had chosen to take the urine test he should await the doctor's arrival in order not to invalidate the test and lose his driving privilege. Thereupon—the report continues—petitioner became irate, jumped at and struck one officer and wrestled with and injured the arresting officer. The latter officer, assisted by two members of the California Highway Patrol, subdued petitioner and handcuffed him. Petitioner then elected to take a blood test, this was done, and he was booked into the county jail for violation of Vehicle Code section 23102 and Penal Code sections 241 and 243 (assault and battery upon a peace officer). The blood test showed .29 blood alcohol.

On December 10, 1973, a parole hold was placed on petitioner. On December 12, represented by appointed counsel, he pled guilty in municipal court to violation of Vehicle Code section 23102. The court suspended imposition of sentence, placed petitioner on 90 days summary probation, and ordered him to serve 15 days in county jail less credit for 5 days served, with an additional 5 days suspended. The Penal Code charges were not pursued by the district attorney. Petitioner's net jail sentence was completed on December 17, but he was continued in custody under the parole hold.

On December 18, 1973, a parole violation report was submitted to the Adult Authority by petitioner's parole agent. The report alleged violation by petitioner of the three above-mentioned conditions of his parole agreement. Three days later, on December 21, the Adult Authority suspended petitioner's parole and ordered him returned to prison. Pursuant to that order, petitioner was transferred to San Quentin prison on January 3, 1974.

On January 17, 1974, petitioner was served with a notice (CDC Form 263) that a written complaint had been filed against him alleging the three parole violation charges set forth in the report. On January 18, petitioner was advised of his right to a revocation hearing on the three charges; he requested that his parole agent, George Thomas, be called as a witness, and that counsel be appointed to assist petitioner in his explanation of the circumstances surrounding the assaultive conduct charge. An attorney was appointed to represent petitioner, at state expense, and on January 31 a copy of the parole violation report was forwarded to petitioner's appointed counsel, together with a notice that February 14 and California State Prison at San Quentin had been fixed

as the time and place for the revocation hearing. Petitioner and his parole officer, Thomas, were also given notice of the hearing.

At the February 14 revocation hearing, petitioner pled guilty to the first and third charges in the parole violation report—the use of alcoholic beverages (Condition 1) as shown by his .29 blood alcohol, and his failure to obey all laws (Condition 11) as evidenced by his plea of guilty in municipal court to violation of Vehicle Code section 23102. At the revocation hearing petitioner pled not guilty to the assaultive conduct charge (Condition 12), but in explaining the incident he admitted engaging in an altercation with the officers when he sought to leave the holding room to go to the bathroom, after being denied permission to do so and waiting more than 10 minutes for the doctor's arrival. No evidence was introduced to dispute the evidence against petitioner; rather, his attorney argued that petitioner should be given another chance on parole if he would make a commitment to abstain in the future from the use of alcoholic beverages. Thomas, the parole officer, also took a position generally favorable to petitioner. Petitioner, when asked to do so, avoided a commitment to abstain from the future use of intoxicants, but did tell the Adult Authority panel that he would take a prescribed medicine (antibuse) if his parole officer would deliver it to him.

Based on the evidence at the revocation hearing, and upon petitioner's recognized proclivity for engaging in assaultive conduct when drinking, petitioner was found guilty on the assaultive conduct charge, and it was further found that there were no mitigating circumstances in respect to his pleas of guilty to the first and third charges. At the close of the February 14 hearing, his parole was revoked and the matter was placed on the December 1974 calendar for further parole consideration.[2]

Upon petitioner's application to this court, we issued an order to show cause limited to the claim that petitioner was prejudiced by the failure of the Adult Authority to provide him a prerevocation hearing on the charged violation of the assaultive activities condition of his parole agreement.

[2]On May 20, 1974, the Adult Authority modified its order of February 14 and fixed petitioner's term at life. He is presently serving his term at California State Prison at Folsom.

## DISCUSSION

*Morrissey* v. *Brewer, supra,* 408 U.S. 471, explains why, under the due process clause, a parolee is entitled to two separate hearings during the usual process of parole revocation: "There is typically a substantial time lag between the arrest and the eventual determination by the parole board whether parole should be revoked. Additionally, it may be that the parolee is arrested at a place distant from the state institution, to which he may be returned before the final decision is made concerning revocation. Given these factors, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." (408 U.S. at p. 485 [33 L.Ed.2d at p. 496].)

■ The first hearing (the prerevocation hearing) required by *Morrissey* is in the nature of a "preliminary" hearing. It must be conducted "at or reasonably near" the place of arrest or the alleged parole violation, and, as we have seen, "as promptly as convenient after arrest while information is fresh and sources are available." The ultimate function of the hearing officer at this initial stage is "to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." Determination of that issue adverse to the parolee warrants his continued detention and return to the state correctional institution pending the final decision of the parole board on revocation. (408 U.S. at pp. 485-487 [33 L.Ed.2d at pp. 496-498].)

Prior to the final decision by the parole authority, and within a reasonable time after the parolee is taken into custody, a second hearing must be held under *Morrissey* "if it is desired by the parolee." The latter hearing (the revocation hearing itself) must be before "a 'neutral and detached' hearing body such as a traditional parole board." The revocation hearing "must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts [e.g., whether parole conditions were violated] and consideration of whether the facts as determined warrant revocation [e.g., whether there are mitigating circumstances]." (408 U.S. at pp. 487-489 [33 L.Ed.2d at pp. 498-499].)

■ *Morrissey* preindicates that no prerevocation hearing is required where parole is revoked on the basis of parole violation charges admitted

by the parolee to the parole board. (408 U.S. at pp. 477, 490 [33 L.Ed.2d at pp. 492, 499]; see also, *People* v. *Vickers* (1972) 8 Cal.3d 451 at p. 457, fn. 6 [105 Cal.Rptr. 305, 503 P.2d 1313].) In the proceeding at bench, petitioner entered guilty pleas before the parole board to the first and third charges. He cannot, therefore, now successfully argue that he should have been afforded a prerevocation hearing as to those charges.

Nevertheless, under *Morrissey,* petitioner was entitled to a prerevocation hearing on the parole violation charge that he had engaged in assaultive and violent behavior toward the arresting officers.

Our Supreme Court has pointed out that entitlement to a prerevocation hearing may be waived under certain circumstances. "We have no doubt that the right [to a prerevocation hearing] may be expressly waived and it may be deemed to have been waived when a parolee, with knowledge of the right, fails to assert it in a timely manner." (*In re La Croix* (1974) 12 Cal.3d 146, 153 [115 Cal.Rptr. 344, 524 P.2d 816].) Here, although petitioner's parole was suspended long after the effective date of *Morrissey,* there is no showing that he was advised of his right to a prerevocation hearing of the charges specified against him. Neither is there any evidence of an express demand by him for a prerevocation hearing; his petition, in this respect, alleges merely that he was denied such hearing. Thus, giving petitioner the benefit of the doubt, the record is at best equivocal on the question whether he impliedly waived his right to a prerevocation hearing of the charges. (See *In re La Croix, supra,* 12 Cal.3d at p. 153, fn. 4.)

Resolution of the question whether petitioner's due process rights were violated by the Adult Authority's failure to accord him a prerevocation hearing on the charge of assaultive and violent activity does not turn, however, either upon the failure of the Authority to give petitioner timely notice of his right to such hearing or upon any failure on his part to request and to pursue his right to a prerevocation hearing. Rather, the critical issue is whether, under the circumstances, petitioner was prejudiced at the formal revocation hearing by the failure to accord him a prerevocation hearing on that charge. (*In re La Croix, supra,* 12 Cal.3d at p. 154.)

■ Although the due process demands of *Morrissey* require "that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available" (408 U.S. at

p. 485 [33 L.Ed.2d at p. 496]), it does not follow *automatically* from denial of petitioner's right to a prerevocation hearing that he is entitled to relief therefrom. "Due process does not require that a parolee benefit from such a denial, but only that no unfairness result therefrom." (*In re La Croix, supra,* 12 Cal.3d at p. 154.)

■ On the issue of prejudice to petitioner, we note that here the revocation hearing was held at San Quentin, which we judicially notice is less than 40 miles from the San Mateo County jail, petitioner's initial place of detention. This was well within the range of convenience for petitioner's witnesses. He requested the appearance of only one witness, his parole officer. He requested and was allowed counsel. The names of the officers involved as well as the identification numbers of the witnessing California Highway Patrol officers are in the police report. If the appearance of any or all of those officers was desired, their identities were known and their presence could have been requested. A period of slightly more than two months elapsed between the acts charged as violations and the revocation hearing. Four weeks prior to that hearing, petitioner was served with a notice of the parole violation charges and with a copy of the summary of evidence supporting the charges. As heretofore shown, although petitioner denied the assaultive behavior charge, he admitted engaging in an altercation involving the use of force. His blood alcohol at the time of the affray was .29, and he avoided a direct commitment to abstain from the future use of alcohol.

It is evident from the foregoing that petitioner "presents nothing which even suggests that all factual issues to be presented at the summary prerevocation hearing [3] to which he was entitled [on the one charge] would not necessarily have been resolved against him" (*In re La Croix, supra,* 12 Cal.3d at p. 155). We are persuaded, therefore, that the failure to hold a prerevocation hearing on the assaultive and violent activity charges was harmless beyond a reasonable doubt (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]), as petitioner, whose burden it is to show prejudice, has made no such showing. (*In re La Croix, supra,* 12 Cal.3d 146, 154.)

---

[3]We consider as advisory but not controlling those cases of unitary hearing held to satisfy *Morrissey* requirements in *probation* revocation contexts where substantial compliance with *Morrissey's* dictates has been grounded upon a reasonably prompt hearing reasonably near or at the place of the charged violation. (See *People* v. *Buford* (1974) 42 Cal.App.3d 975 [117 Cal.Rptr. 333]; *People* v. *Calais* (1974) 37 Cal.App.3d 898 [112 Cal.Rptr. 685].)

Our conclusion is fortified by the recent case of *In re Winn* (1975) 13 Cal.3d 694 [119 Cal.Rptr. 496, 532 P.2d 144], in which a parolee, charged with four counts of parole violation, was returned to prison without a prerevocation hearing on any of the counts. Following a revocation hearing at which he pled not guilty to all counts, he was found guilty of counts 1 and 4 (involving new convictions of crime) and of count 2 (a charge the subject of a criminal proceeding which had been dismissed).[4] The Supreme Court, noting that petitioner's guilt of the conduct charged in counts 1 and 4 had been determined adversely to him in independent judicial proceedings, and thus could not be relitigated in the revocation proceeding (*Morrissey* v. *Brewer, supra,* 408 U.S. 471, 490 [33 L.Ed.2d 484, 499]; *In re La Croix, supra,* 12 Cal.2d 146, 154-155), declared that "[a]lthough these convictions do not necessarily encompass a probable cause determination as envisioned by *Morrissey's* prerevocation procedure (citations)," yet where petitioner had not met the burden of showing that he was prejudiced by failure to accord him a prerevocation hearing on counts 1 and 4, the failure to hold such a hearing was harmless beyond a reasonable doubt. (*In re Winn, supra,* 13 Cal.3d at pp. 697-698.) Having determined that petitioner was properly detained for a formal revocation hearing on either count 1 or 4, the court concluded "that the failure to conduct a prerevocation hearing on count 2, the count as to which criminal charges were dismissed, does not compel reconsideration of petitioner's parole revocation." (13 Cal.3d at p. 698; see also, *In re Melendez* (1974) 37 Cal.App.3d 967, 974-975 [112 Cal.Rptr. 755].)

The order to show cause is discharged, and the petition for the writ is denied.

Puglia, P. J., and Evans, J., concurred.

---

[4]He was found not guilty on count 3 (association with a person of bad reputation).