[Crim. No. 12256. First Dist., Div. Four. Mar. 15, 1974.]

In re EDUARDO MELENDEZ on Habeas Corpus.

**COUNSEL**

W. Keith Woodmansee, under appointment by the Court of Appeal, for Petitioner.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, John T. Murphy and Kenneth C. Young, Deputy Attorneys General, for Respondents.

**OPINION**

**CHRISTIAN, J.**—Eduardo Melendez seeks habeas corpus, contending that he was denied due process of law in proceedings which led to the revocation of his parole.

On November 15, 1968, petitioner was sentenced to state prison for violation of Penal Code section 261, subdivision 3 (forcible rape). He was paroled on July 8, 1971, and obtained employment as a marine cook.

On October 16, 1972, at a time when petitioner had just returned home from a voyage, Mrs. Elva Trueworthy, sister of petitioner's wife, informed petitioner's parole agent, P. L. Bouchard, that petitioner "had been drinking when ashore and had attempted to molest his daughters." At Bouchard's suggestion Mrs. Trueworthy contacted the Los Angeles Sheriff's office the same day. There Deputy Sheriff D. Stone interviewed petitioner's three daughters, aged 18, 16 and 14, in the presence of their aunt. Two other girls, aged 9 and 11, who were accompanied by their mothers, were also interviewed. Each girl told Deputy Stone that petitioner had committed lewd and lascivious acts upon her a few months earlier. Thereupon, Deputy Stone went to petitioner's home and arrested petitioner for violating Penal Code section 288. According to the arrest report, when the officer approached petitioner's house, he saw petitioner in the yard drinking from a can of beer. The officer detected a strong odor of alcohol on petitioner's breath.

When the sheriff's office presented the case to the district attorney the complaint was refused because (1) it was doubtful that the 9-year-old girl could qualify as a witness in court since she was very hesitant and bashful; (2) if she could not qualify, the testimony of the 11-year-old girl would be uncorroborated; and (3) substantial time had elapsed between the crimes and the making of a report. A few days later petitioner was

interviewed in jail by his parole officer with respect to statements in the police report that petitioner had been drinking, and with respect to the criminal charges. Petitioner denied all charges.

Parole Agent Bouchard then submitted a report to the Adult Authority recommending that petitioner's parole be suspended and that he be returned to prison. On November 8, 1972, petitioner was accorded a pre-revocation hearing at the Los Angeles County jail. (See *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593].) The hearing was conducted by an officer other than petitioner's own parole agent. Petitioner was advised of the purpose of the hearing and of his right to present evidence on his own behalf. The hearing was postponed to enable petitioner to request the appearance as witnesses of his wife and 14-year-old daughter, the two neighborhood girls, and Mrs. Trueworthy. The witnesses were notified, but did not appear. Petitioner does not allege, and the record does not reflect, that he asked for the appearance of Deputy Stone. Thus the charge concerning consumption of alcohol was apparently submitted without objection by petitioner on the police report. Over petitioner's objection the hearing proceeded; the hearing officer concluded that there was probable cause to believe that petitioner had violated two conditions of his parole by drinking and by sexual advances to the two neighbor children. Petitioner was returned to prison.

A final revocation hearing was conducted at the prison. Petitioner changed his strategy with respect to the appearance of witnesses: he did not ask for the appearance of the neighbor children; instead he asked only for the appearance of Deputy Stone (the officer who had seen him drinking) and of Sylvia Melendez, Maritza Melendez and Elva Trueworthy who, according to the parole agent's report, would corroborate the evidence that petitioner had been drinking. Apparently some of the desired witnesses might have given evidence of other sexual misconduct. Parole Agent Bouchard was the only witness who appeared; he was questioned by petitioner. Melendez denied any parole violations and objected to the absence of the witnesses named above. Petitioner does not allege, and the record does not reflect, that petitioner asked for the appearance of the two neighbor girls. At the conclusion of the hearing the hearing panel upheld both charges of parole violation. Parole was accordingly revoked; it was ordered that petitioner be placed on the Adult Authority's February 1974 calendar for further action. In making this decision the Adult Authority stated: "It is the opinion of both panel members that the evidence of the charges of parole violation in this case is overwhelming. The police reports and the P.&.C.S. [Parole and Community Services re-

port of Agent Bouchard] violation report to the Adult Authority are very specific. The reporting officer D. Stone, in fact, witnessed subject's 5B violation, having observed him drinking a can of beer and smelled, as well, a strong odor of alcohol emanating from Mr. Melendez. In addition to the police reports and the parole agent's report, there are also letters from his wife, Mrs. Sylvia Melendez (which was verbally translated for the panel by CPS I F.R. Searing), his sister-in-law, Mrs. Elva Trueworthy, his daughters, Sandra Melendez, Maritza Melendez and Nora Melendez, relating to conduct by subject both recent and during years past, which clearly indicates that subject continues to have psycho-sexual problems which he is unable to control, causing him to remain a danger to young females. The confirmation in the affidavits, in letter form, of the daughters, definitely corroborates, in the opinion of this panel, the accounts of molestation related by the two non-family young victims, Cynthia Ponce, age 11, and Jane Vao Ong, age 9. . . . It is this panel's opinion from the letters referred to hereinabove, that the wife, and particularly the daughters, fear for their safety, and also the sister-in-law, Elva Trueworthy, which fear is just cause for their non-appearance at the hearing."

■ Petitioner contends that he was denied due process in that he was not provided with the assistance of counsel either at the preliminary hearing or at the final hearing on revocation of parole. After the proceedings which are complained of by petitioner the United States Supreme Court held that a felony probationer or parolee is entitled in some cases to the assistance of counsel at a revocation hearing. (*Gagnon* v. *Scarpelli*, 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756].) The Attorney General correctly points out that *Gagnon* v. *Scarpelli* was a sequel to *Morrissey* v. *Brewer, supra,* 408 U.S. 471, in which the United States Supreme Court established (with prospective application) the requirement that a parolee be accorded a preliminary and a final hearing before revocation of parole. The fact that *Morrissey* was prospective strongly suggests that *Gagnon* is also prospective. Moreover to apply *Gagnon* retroactively would nullify all parole revocation proceedings which took place between June 1972 (when *Morrissey* was decided) and May 1973 (when *Gagnon* was decided). We find no basis to attribute to the United States Supreme Court the intention to invalidate the attempts of the states to comply with so recent a decision. (Cf. *In re Prewitt* (1972) 8 Cal.3d 470, 476 [105 Cal. Rptr. 318, 503 P.2d 1326].)

Petitioner contends that it was unlawful for the Adult Authority to revoke his parole on the basis of "charges that were dismissed by a court of law." ■ But dismissal of charges by a court is not a bar to parole revocation based on the same facts. (See *In re Martinez* (1970) 1 Cal.3d

641, 649 [83 Cal.Rptr. 382, 463 P.2d 734].) Moreover, the record in the present case is not that charges were dismissed but that the district attorney exercised his authority to refuse prosecution.

Finally petitioner contends that the preliminary hearing and the final hearing on revocation of parole did not conform to due process of law. Both hearings must be examined because, even when the final hearing has been conducted properly, a deprivation of due process in the preliminary hearing will compel reinstatement of parole and return of the case to the preliminary stage. (*In re Castaneda* (1973) 34 Cal.App. 3d 825 [110 Cal.Rptr. 385].)

### *The preliminary hearing.*

■ Due process in the preliminary hearing requires: (1) conduct of the hearing by a person other than the parole officer who initially dealt with the case; (2) notice of the purpose of the hearing, stating what parole violations are alleged; (3) at the hearing the parolee may present evidence in his own behalf; (4) "On request of the parolee, persons who have given adverse information on which parole revocation is to be based are to be made available for questioning in his presence." (The requirement of confrontation may be dispensed with if the hearing officer determines that disclosure of the identity of an informant will create risk of harm.) (5) A summary of the hearing is to be prepared (see *Morrissey* v. *Brewer, supra,* 408 U.S. 471, 486, 487 [33 L.Ed.2d 484, 497, 498]).

■ There is no contention that in the present case the preliminary hearing was defective in any particular other than the confrontation of witnesses. It is true that as to the charge that petitioner sexually molested two neighbor girls, he requested the appearance of both girls (among other witnesses). The report of the hearing officer indicates that the witnesses asked for by petitioner "were all notified, but none were present for the hearing." The lack of any statutory process for compelling the attendance of witnesses at such a hearing does not dispense with the requirement of confrontation. (*In re Prewitt, supra,* 8 Cal.3d 470, 477, fn. 7.) There was no determination by the hearing officer that disclosure of the identity of any informant would create risk of harm. It therefore would have been contrary to the requirements of *Morrissey* v. *Brewer* to hold petitioner for further proceedings if only the molestation charge had been involved. However, there was another charge: the "violation report" prepared by Agent Bouchard related a statement by Deputy Sheriff Stone that petitioner had been drinking from a can of beer and that there had been a strong odor of alcohol on petitioner's breath. This hearsay state-

ment could properly be considered by the hearing officer. (*Morrisey* v. *Brewer, supra,* 408 U.S. 471, 487; cf. *People* v. *Peterson* (1973) 9 Cal. 3d 717, 725 [108 Cal.Rptr. 835, 511 P.2d 1187].) Where petitioner did not ask for the presence of Deputy Stone, his failure to appear did not deprive petitioner of his right of confrontation and the order suspending petitioner's parole is valid.

## The revocation hearing.

In *Morrissey* v. *Brewer* the United States Supreme Court defined as follows the requirements of due process in a final hearing on revocation of parole: "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." (408 U.S. at p. 489 [33 L.Ed.2d at p. 499].)

Petitioner contends that the right to confront and cross-examine adverse witnesses was denied. It is true that Parole Agent Bouchard was the only witness to appear. The hearing officer made a finding that petitioner's wife and daughters had just cause to fear for their safety if they appeared as witnesses. Inexplicably, petitioner asked for the appearance of Deputy Stone, whose appearance would have been essential had the charge of drinking been the sole basis of the revocation proceedings, and failed to ask for the appearance of the two neighbor girls whom he was entitled to confront and cross-examine on the charge of sexual molestation. Where there was no request there was no denial of confrontation. The Adult Authority was therefore entitled to revoke petitioner's parole on the basis of abundant written evidence supporting the findings that petitioner actually molested the two neighbor girls and that petitioner is a danger to young females.

A technical and rigid analysis of this procedural history might suggest that for either charge of parole violation to subsist as a basis for final action by the Adult Authority, it must separately meet *Morrissey* v. *Brewer* requirements at both the preliminary and the final hearings. We do not believe that due process requires such a result. In *Morrissey* v.

*Brewer* the Supreme Court declared that it had "no thought to create an inflexible structure for parole revocation procedures." (408 U.S. at p. 490 [33 L.Ed.2d at p. 499].) The test should be not whether there has been technical regularity but whether the parolee was held under procedures which afforded him the rights identified in *Morrissey*. Here petitioner's detention was proper. The preliminary hearing justified detention as to the drinking charge. The final hearing justified revocation on the sexual charge. Petitioner was aware at all times that revocation was being sought on the basis of both charges.

The order to show cause is discharged; the petition is denied.

Rattigan, Acting P.J., and Devine, J.,* concurred.

A petition for a rehearing was denied April 9, 1974, and petitioner's application for a hearing by the Supreme Court was denied May 8, 1974.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.