[Crim. No. 17844. First Dist., Div. Three. Jan. 17, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
DENNIS A. CAMBITSIS et al., Defendants and Appellants.

**COUNSEL**

Weltin & Van Dam, Edward L. Knapp, Philip R. Weetin and Brian E. Kerss for Defendants and Appellants.

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**FEINBERG, J.**—Appellants were convicted in 1976 on charges of felony conspiracy related to the forgery of parimutuel tickets. They were placed on three years' formal probation. In 1977, they were charged with violation of one of the conditions of probation, i.e., that they not attend any race track in California during the period of probation. At their probation revocation hearing, the court admitted into evidence, over defense counsel's objection, the transcript of one witness' testimony against appellants at the preliminary hearing on criminal charges stemming from the same incident on which the probation violation was based. ■ Appellants contend that the admission of this testimony was a denial of due process and of their right to confront and cross-examine adverse witnesses.

We conclude that the trial court's admission of the transcript was not a violation of appellants' rights. Their right to confront and cross-examine the witness was not denied, since they had had ample opportunity to cross-examine him at the preliminary examination proceeding, and the transcript admitted by the court at the probation revocation hearing included the defense counsel's cross-examination of the witness.

Evidence against appellants at the probation revocation hearing consisted of the live testimony of William Risse, a parimutuel clerk, and the transcript of testimony by Darrell Talbot from the preliminary hearing. Risse testified that on February 24, 1977, as he was cashing previous day tickets at the Santa Anita Race Track, each of the appellants appeared separately at his window and presented winning tickets for the seventh race of February 21. He testified that Peter Bratis presented two tickets worth about $1,300 each, and that each of the other appellants presented one ticket apiece.

The following day, Risse was informed of the cashing of forged tickets. He identified the three appellants as those for whom he had cashed tickets the previous day. His identification was made initially from a photocopy of a sheet of paper containing four photographs which he noticed as he walked into the race track's house auditor's office and was based on eye contact with appellants at the time they cashed the tickets. Risse also identified appellants at the time of their preliminary hearing in October of 1977; at that time, they were seated separately in the courtroom.

The testimony of Talbot was summarized by the district attorney at the time it was offered in evidence. Talbot testified that he is a cabdriver and was working on February 24 in Arcadia. He stated that he picked up three individuals whom he identified as appellants at the Ramada Inn, located directly across the street from the Santa Anita Race Track, at about two o'clock in the afternoon, and drove them to the Los Angeles Airport, about an hour's drive. Testimony of William Wolsey, an employee of Ramada Inn, that appellants had inquired about a ride from the inn to the race track around noon, was excluded because several pages of the cross-examination of that witness were missing from the transcript. The defense attorneys objected to the Talbot testimony on confrontation grounds, and it was admitted over their objection.

Appellants presented alibi witnesses. Appellant Dennis Cambitsis produced a time card, which was properly authenticated, suggesting that he had been at work in Oakland on February 24. However, he produced no witness with personal knowledge that he had in fact been there. Appellants John and Peter Bratis produced witnesses who testified that they had been at the Fruehauf Corporation in the San Mateo area at the time. However, one of those witnesses was not certain that both had in fact been there; the others were friends and business associates of appellants.

In *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], the Supreme Court enunciated certain minimum due process requirements for hearings on parole revocation: among the requirements is "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." (408 U.S. at p. 489 [33 L.Ed.2d at p. 499].) In *Gagnon* v. *Scarpelli* (1973) 411 U.S. 778 [36 L.Ed.2d 656, 93 S.Ct. 1756], the court held that those same due process requirements exist with regard to probation revocation hearings. However, the court also stressed in those cases that the full panoply of rights accorded a defendant in a criminal trial are not required in parole and probation revocation hearings: "...there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (*Morrissey* v. *Brewer, supra,* at p. 489 [33 L.Ed.2d at p. 499].)

Thus, hearsay evidence, such as police reports and probation records, are admissible in revocation hearings. (*People* v. *Rafter* (1974) 41 Cal. App.3d 557, 561 [116 Cal.Rptr. 281]; see also *People* v. *Vickers* (1972) 8 Cal.3d 451, 457-458 [105 Cal.Rptr. 305, 503 P.2d 1313]; *In re Thomas* (1972) 27 Cal.App.3d 31, 34-35 [103 Cal.Rptr. 567].) "Whether the report is admissible in a criminal trial is not controlling; rather we look to see if the court 'has reason to believe the facts disclosed by such sources.'" (*People* v. *Turner* (1975) 44 Cal.App.3d 753, 756 [118 Cal.Rptr. 924], quoting *In re Cook* (1944) 67 Cal.App.2d 20, 26 [153 P.2d 578].)

However, hearsay evidence in the form of testimony by an adverse witness also involves the right of confrontation and cross-examination, which is expressly guaranteed to a defendant in a probation revocation

hearing, unless the hearing examiner finds good cause for denial of that right. (*Morrissey* v. *Brewer, supra, Gagnon* v. *Scarpelli, supra; People* v. *Vickers, supra.*) Good cause has been found where the hearing officer determines that an informant would be subject to risk of harm (*In re Melendez* (1974) 37 Cal.App.3d 967 [112 Cal.Rptr. 755]; *People* v. *Vickers, supra*); where the evidence thus presented is merely cumulative (*People* v. *Peterson* (1973) 9 Cal.3d 717 [108 Cal.Rptr. 835, 511 P.2d 1187]); or where the witnesses would not have been adverse to defendant, and there was no request made to confront and cross-examine them (*People* v. *Turner, supra,* 44 Cal.App.3d 753).

The instant appeal differs from the cases cited, however, in that here appellants were not in fact denied the right to confront and cross-examine Talbot. It is true that Talbot was not present at the probation revocation hearing and appellants were not able to cross-examine him at that time. Nonetheless, their defense counsel at the preliminary hearing did have that opportunity. The transcript of Talbot's testimony introduced at the revocation hearing contained the entire cross-examination, and the record of the revocation hearing indicated that the trial judge read the transcript before ruling. It is doubtful that cross-examination at the probation revocation hearings would have been any more extensive or thorough than it was at the preliminary hearing.

Under the rules of evidence for a criminal trial, Talbot's testimony would have been admissible upon a showing that, first, he was unavailable to testify, and second, that defendant had a similar motive and opportunity to confront and cross-examine the witness in the prior proceeding. (Evid. Code, § 1291.) In discussing the requirements of the rule and the purposes behind the right of confrontation, Wigmore has noted that the purposes are twofold: the "main and essential" one is to secure for the opponent the opportunity to cross-examine the adverse witness; a "secondary and dispensable" purpose is to give the tribunal the opportunity to observe the demeanor of the witness. (5 Wigmore, Evidence (3d ed. 1940) §§ 1395, 1396.) The first requirement of the hearsay exception for former testimony, unavailability, seems to be related to the "secondary and dispensable" purpose. The Supreme Court has noted that the exception to the hearsay rule for former testimony is based on the theory "that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement." (*Barber* v. *Page* (1967) 390 U.S. 719, 722 [20 L.Ed.2d 255, 258, 88 S.Ct. 1318].) McCormick has argued that the

unavailability requirement should be liberally construed to favor, in case of doubt, the admission of this type of evidence, and notes a trend in this direction. (McCormick, Evidence (2d ed. 1972) § 261, p. 626.)

It is clear that due process safeguards guaranteed to a defendant are less comprehensive in a probation revocation hearing than for a criminal trial. (*Morrissey* v. *Brewer, supra,* 408 U.S. 471; *Gagnon* v. *Scarpelli, supra,* 411 U.S. 778.) Similarly, evidentiary rules are more relaxed in such a hearing than in a criminal trial. (*In re Carroll* (1978) 80 Cal.App.3d 22 [145 Cal.Rptr. 334]; *In re Bell* (1974) 36 Cal.App.3d 643, 647-648 [111 Cal.Rptr. 581]; *In re Melendez, supra,* 37 Cal. App.3d 967, 974.) Furthermore, the standard of proof for probation revocation is less stringent than in a criminal trial; although it has been variously stated in the cases, it is clear that proof beyond a reasonable doubt is not required. (*In re Coughlin* (1976) 16 Cal.3d 52, 56 [127 Cal.Rptr. 337, 545 P.2d 249].) Where the district attorney seeks to introduce former testimony in such a hearing, therefore, it would seem appropriate to loosen the requirement of unavailability. So long as defendant in the former proceeding was afforded the right, and had a similar motive to cross-examine the witness, and the record of the cross-examination is provided to the court in the probation revocation hearing, it would appear that "substantial compliance with the purposes" of the rule adequately provides defendant in a probation revocation hearing the right to confront and cross-examine witnesses guaranteed by *Morrissey* and *Gagnon.*

In this case, while there was no specific showing of unavailability of the witness, appellants had confronted and cross-examined the witness with respect to the incident at issue, albeit in a different proceeding, with the same motive that they would have had if they had had the opportunity to cross-examine at the revocation of probation hearing. We are of the opinion, therefore, that the trial court correctly concluded that, for the purposes of the probation revocation hearing, the evidence was admissible and did not constitute a denial of appellants' constitutional rights.

The judgment revoking appellants' probation is affirmed.

White, P. J., and Scott, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 13, 1980.