[Crim. No. 21675. July 23, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD SHIRES WINSON, JR., Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Elaine A. Alexander, Chief Assistant State Public Defender, and Andrew Freeman, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington, Alan S. Meth and Steven H. Zeigen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHARDSON, J.**—A preliminary hearing transcript of a witness' testimony in a defendant's related criminal case is not a proper substitute

for the live testimony of the witness at defendant's probation revocation hearing in the absence of the declarant's unavailability or other good cause.

We have reached the foregoing conclusion in reviewing the revocation of defendant's probation imposed following his 1978 conviction of assault with a deadly weapon. Defendant was placed on formal probation for three years, the conditions of which included one year's confinement in the county jail and compliance with all state laws. Three weeks after his release from county jail, he was arrested and charged with two offenses, an attempted robbery and an assault with a deadly weapon against Winther (victim).

At defendant's preliminary hearing on the new charges the victim testified that on December 19, 1978, he saw defendant and codefendant Mike May in a San Diego restaurant. He exchanged greetings with May, ate dinner, and left the restaurant. As the victim walked through an adjacent alley, May grabbed him from behind, shoved him against a wall, and demanded money. According to the victim, defendant then drew a knife, placing it against the victim's jaw. In an ensuing struggle, defendant cut the victim along the jaw and stabbed him in the back of the head.

Residents from a nearby apartment house, including Lisa Wennstrom, an acquaintance of defendant and May, responded to the victim's cries. Lisa had seen neither the confrontation nor the assailants, but the victim told her he was attacked by "Mike," a blond stocky man, and a tall, dark, "male Mexican." Wennstrom supplied Mike's last name, and after inquiring whether the other man had a mustache and teardrop tattoos on his face, told the victim that the man was probably "Richard."

Shortly thereafter, defendant was arrested in the company of May and a third man at which time both defendant and May were carrying knives. The victim identified May from a photographic lineup supplied by police on the night of the attack. Three days later he similarly identified defendant from a second photographic lineup.

On February 27, 1979, defendant was given notice to show cause why his probation should not be revoked. On March 16, 1979, and after the victim had left the state, an evidentiary hearing was held on the prosecution's request to utilize the transcript of defendant's preliminary

hearing at the forthcoming criminal trial. Concluding that the prosecution had not exercised due diligence in attempting to locate and maintain contact with the victim, the court denied use of the transcript, and thereafter dismissed the criminal charges arising from the assault.

Subsequent proceedings then focused on defendant's probation revocation hearing. He objected to use of the transcript of the victim's preliminary hearing testimony on the multiple grounds of lack of notice at the preliminary hearing of its proposed intended use, hearsay, and a denial of the rights to confrontation, cross-examination, and due process. Although no further information regarding the victim's availability was offered, the prosecutor stated that the victim could be found and produced at the hearing. Without explanation the court rejected defendant's objections, ruled that the transcript could be used, and it was thereafter read at the revocation hearing. The court also heard additional testimony from Wennstrom and two investigating police officers. The victim was not produced, although the prosecutor again repeated his belief that the victim might be available. Rejecting defendant's alibi, the court thereupon found that he had violated his probation and sentenced him to four years in state prison on the original offense. He appeals.

Defendant contends that the trial court erred in admitting and considering the preliminary hearing transcript as evidence at his probation revocation proceeding. Pointing to the court's earlier ruling that the prosecution had not exercised due diligence in maintaining contact with the victim, defendant argues that use of the transcript denied him his due process rights to confront and cross-examine adverse witnesses. We consider whether the court may, at the probation revocation hearing and without a further showing or explicit finding of good cause, use the preliminary hearing transcript over defense objections.

It is fundamental that both the People and the probationer or parolee have a continued post-conviction interest in accurate fact-finding and the informed use of discretion by the trial court. The probationer or parolee's concern is "to insure that his liberty is not unjustifiably taken away and the State['s] to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community." (*Gagnon* v. *Scarpelli* (1973) 411 U.S. 778, 785 [36 L.Ed.2d 656, 663-664, 93 S.Ct. 1756]; *People* v. *Coleman* (1975) 13 Cal.3d 867, 873-874 [120 Cal.Rptr. 384, 533 P.2d 1024].)

The People, relying on *People* v. *Cambitsis* (1980) 101 Cal.App.3d 141 [161 Cal.Rptr. 441], defend the trial court's admission and use of the transcript. They stress that defendant at the preliminary hearing had an adequate opportunity to cross-examine the witness, and that the use of hearsay evidence at such hearings has been judicially approved.

While the People's argument has a surface appeal, we are unable to reconcile it with the minimum due process standards on parole revocation hearings as defined by the United States Supreme Court. ■ In *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593], the court observed that "We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." (408 U.S. at p. 480 [33 L.Ed.2d at p. 494].) The high court distinguished criminal and parole revocation proceedings. Referring to the latter, it observed that "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (P. 489 [33 L.Ed.2d p. 499].) The court nonetheless insisted that among the *minimum* parole revocation procedures required by due process is "the right to confront and cross-examine adverse witnesses (*unless the hearing officer specifically finds good cause for not allowing confrontation*); . . ." (*Ibid.*, italics added.)

Thereafter in *Gagnon* v. *Scarpelli, supra*, 411 U.S. at page 782 [36 L.Ed.2d at pp. 661-662], the high tribunal extended the *Morrissey* protections to probationers. Answering the contention that interstate probation violations would cause "difficulty and expense [in] procuring witnesses," the court "emphasize[d] that we did not in *Morrissey* intend to prohibit use *where appropriate* of the *conventional* substitutes for live testimony, including affidavits, depositions, and documentary evidence." (411 U.S. at pp. 782-783, fn. 5 [36 L.Ed.2d at p. 662]; italics added.) We faithfully applied the *Morrissey/Gagnon* requirements to state probationers in *People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal. Rptr. 305, 503 P.2d 1313].

In criminal trials, the right to confront and cross-examine adverse witnesses, constitutionally protected by the confrontation clause of the Sixth Amendment to the federal Constitution, is strongly preferred although not absolute. Recently, the high tribunal in examining the interaction of the confrontation clause and the hearsay rule, observed "The Court has emphasized that the confrontation clause reflects a

preference for face-to-face confrontation at trial, and that 'a primary interest secured by [the provision] is the right of cross-examination.'" (*Ohio* v. *Roberts* (1980) 448 U.S. 56, 63 [65 L.Ed.2d 597, 606, 100 S.Ct. 2531], fn. omitted.) The court cautioned that the rule is not absolute and restricts rather than bars all hearsay, noting, however, that "In the usual case (*including cases where prior cross-examination has occurred*), the prosecution *must* either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." (*Id.*, at p. 65 [65 L.Ed.2d at p. 607], italics added.) If a witness is unavailable, the "statement is admissible only if it bears adequate 'indicia of reliability.'" (*Id.*, at p. 66 [65 L.Ed.2d at p. 608].)

The *Cambitsis* court characterized the opportunity to cross-examine an adverse witness as the "main and essential" purpose of the right of confrontation, while describing as "secondary and dispensable" the opportunity for the tribunal to observe the witness' demeanor. (101 Cal.App.3d at p. 145.) The Supreme Court, however, has given equal weight to the latter purpose. Last year in *Ohio* v. *Roberts, supra*, 448 U.S. 56, the high tribunal, quoting from its holding in *Mattox* v. *United States* (1895) 156 U.S. 237, 242-243 [39 L.Ed. 409, 411, 15 S.Ct. 337], noted that the confrontation clause "envisions 'a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' [Citation.]" (448 U.S. at pp. 63-64 [65 L.Ed.2d at p. 606].) So important are these interests "that the absence of proper confrontation at trial 'calls into question the ultimate "integrity of the fact-finding process."' [Citation.]" (*Ibid.*) Thus the court has indicated that *both* interests—cross-examination *and* the opportunity to observe the demeanor of the witness—are not lightly to be disposed of in the criminal, fact-finding process. (See *People* v. *Green* (1969) 70 Cal.2d 654, 661 [75 Cal.Rptr. 782, 451 P.2d 422] ["cross-examination neither may be *nunc pro tunc* nor may it be *tunc pro nunc*."].)

Our conclusion that a finding of good cause is required before the preliminary hearing transcript may be used at a revocation hearing is thus compelled by the high court's precise enunciation of minimum due process requirements in such proceedings. It also is compelled by the emphasis of the Supreme Court on the equal value of cross-examination and the opportunity for observation of the witness' demeanor.

In addition, and within different contexts, our own prior interpretations of the enunciated *Morrissey* standards presage the result here. For example, in *People* v. *Vickers* we characterized the *Morrissey* requirements as follows: "Adverse witnesses are to be made available for questioning by the parolee except when the hearing officer determines that an informant would be subject to risk of harm if his identity were disclosed." (8 Cal.3d at p. 457.) Similarly, in *In re Bye* (1974) 12 Cal.3d 96 [115 Cal.Rptr. 382, 524 P.2d 854], in discussing the rights of those outpatients who are in civil addict programs but threatened with revocation of their outpatient status, we affirmed that before termination of such status they are entitled to *Morrissey* protections including the right to cross-examine adverse witnesses.

In *In re Coughlin* (1976) 16 Cal.3d 52 [127 Cal.Rptr. 336, 545 P.2d 249], in like fashion, we examined procedures for revocation of probation following acquittal on criminal charges. Rejecting petitioner's claim that the probation revocation hearing subjected him to double jeopardy, we stated "The proceeding took the form of a trial, with the presence of witnesses and the introduction of evidence, only because due process principles *required* such a hearing for petitioner's own protection." (16 Cal.3d at p. 61, italics added.)

Finally, in *People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622], we held that a California Rehabilitation Center (CRC) *inpatient* is entitled to a hearing before exclusion from CRC. Analyzing the due process rights to be afforded such inmates, we concluded that because the decision is "evaluative" in nature and based on "specialized subjective judgment . . . rather than on the existence of particular and contestable facts" (25 Cal.3d at p. 275), confrontation and cross-examination need not be afforded the patient. We distinguished the inpatient's interests from those of an outpatient on the basis of lack of a liberty interest in the former. (*Id.*, at pp. 270-277.) We therefore held the formal *Morrissey* procedures were not entirely applicable.

We cannot accept the People's suggestion that if the same evidence which was contained in the transcript had been summarized in the probation officer's report it would have been sufficient to revoke defendant's probation. ■ Only a *summary* revocation of probation to preserve jurisdiction may be based upon a parole or probation officer's report. (*People* v. *Vickers, supra,* 8 Cal.3d at pp. 460-461; Pen. Code, § 1203.2.) In such cases the parolee or probationer must there-

after be given a *Morrissey* hearing with its attendant due process protections "to afford the defendant an opportunity to require the Authority to establish that the alleged violations did in fact occur and justified the revocation." (*Vickers*, at p. 460.)

■ We emphasize that within this context the right of confrontation is not absolute. Confrontation may be denied if the trier-of-fact finds and expresses good cause for doing so. Thus, the risk of harm to an informant may suffice to deny a parolee the right to confrontation. (*Morrissey* v. *Brewer, supra*, 408 U.S. at p. 487 [33 L.Ed.2d at pp. 497-498]; *People* v. *Vickers, supra*, 8 Cal.3d at p. 457.) Generally, if the witness is legally unavailable, the former testimony may be admitted. Similarly, where "appropriate," witnesses may give evidence by document, affidavit or deposition (*Gagnon, supra*, 411 U.S. at p. 782, fn. 5 [36 L.Ed.2d at p. 662]; *Morrissey, supra*, at p. 487 [33 L.Ed.2d at pp. 497-498] [the parolee "may bring letters, documents, or individuals who can give relevant information to the hearing officer"]; *In re Bye, supra*, 12 Cal.3d at p. 110, fn. 15). In California, the Evidence Code specifically authorizes the use in later proceedings of previous testimony of a witness currently "unavailable" as that term is statutorily defined. (§§ 240 and 1290 et seq.)

The issue of whether former testimony may be utilized in lieu of a witness' personal appearance is best resolved on a case-by-case basis. (See Note, *The Impossible Dream?: Due Process Guarantees for California Parolees and Probationers* (1974) 25 Hastings L.J. 602, 611-612.) ■ In the case before us the following circumstances, in combination, persuade us that the preliminary hearing transcript was improperly admitted into evidence: the testimony at issue was that of the sole percipient witness to the alleged parole violation, a finding of *no* legal unavailability was made in the underlying proceedings in which the charges were then dismissed, no additional evidence was introduced which established the witness' unavailability, and the court made no specific finding of good cause for denying the right to confront and cross-examine.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Bird, C. J., Tobriner, J., Mosk, J., Kingsley, J.,* and Klein, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.

NEWMAN, J.—I concur, but I would have based the opinion on the California rather than the federal Constitution.