Filed 8/6/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>                    v.<br><br>BRANDON LIGGINS,<br><br>      Defendant and Appellant. | A156843<br><br>(City & County of San Francisco<br>Super. Ct. Nos. 226811,<br>16020127) |

Brandon Liggins appeals the trial court's determination that he violated his probation by assaulting Precious Roy.

There are two primary bases for the appeal. Liggins argues, first, that the trial court abused its discretion by admitting out-of-court statements from Roy at his probation revocation hearing under the spontaneous statement exception to the hearsay rule, and second, that as a result, he was deprived of his due process right to confront an adverse witness.

We conclude that, while the trial court was within its discretion to admit the challenged statements under the spontaneous statement exception, their admission in the absence of a showing of Roy's unavailability or other good cause to present hearsay in lieu of live testimony from her violated Liggins's due process right of confrontation.

We must therefore reverse.[1]

---

[1] Liggins raises a third issue—whether the trial court erred in failing to hold a hearing on Liggins's claimed lack of ability to pay certain fines that the

# I. BACKGROUND

On December 1, 2016, Liggins pleaded guilty to willfully inflicting corporal injury on Roy, his former girlfriend. For this offense, he received three years' probation. Liggins violated the terms of his probation multiple times, and each time it was reinstated with modified terms.

The violation in the current case arises from an alleged altercation between Liggins and Roy in the early hours of September 10, 2018. Around 4:00 o'clock in the morning, police responded to a silent hold-up alarm activated at a San Francisco convenience store. Roy was found outside the store crying and yelling. She told officers Liggins was arguing with her when he started punching, kicking, and choking her. After the fight, Liggins apparently rode away on his bicycle.

When Officer Brandon Smith responded to the scene and began collecting information from Roy about the incident, her behavior was hot-tempered and unruly. When she approached her car, she found its windows broken and began to scream. She angrily berated the person who had accompanied her to the store for sleeping in the car and not waking up during the fight. She then cursed at the police for not doing enough, and asked for a police badge and gun so she could shoot Liggins herself. A man then rode up to the scene on Liggins's bicycle, giving Roy her car keys. Liggins, she told Officer Smith, "is going to jail."

Eventually, Officer Serhiy Kryvoruka joined Officer Smith on scene. The two officers asked Roy to calm down so they could make an accurate report, and at first, she seemed to comply. Not far from the convenience store,

court imposed in connection with its revocation of Liggins's probation. Because we reverse the revocation order (and thus the associated fines as well) on the grounds discussed in the text, we need not address Liggins's lack-of-ability-to-pay argument.

Officer Kryvoruka arrested Liggins. They walked Roy over to where Liggins was being held and asked her to identify him as part of a "cold show." Roy identified Liggins, becoming upset again at that point. She told officers, " 'That person in front of me is Brandon Liggins, the same person who just committed a crime against me.' " Officer Kryvoruka testified that Roy sounded angry and upset, and was speaking so fast at points that he had trouble writing information down.

Months later, by the time of Liggins's preliminary hearing, his former attorney Erica Franklin stated that Roy had recanted her accusations against Liggins. Franklin claimed Roy told her Liggins never struck or even threatened to harm her. According to Franklin, Roy said that when Roy came outside of the store, she found belongings from inside her car on the sidewalk, but did not know if Liggins was the one who put them there. She was also not sure how she received the cuts and bruises that she originally told police were inflicted by Liggins. Her erratic behavior and anger at the scene of Liggins's arrest, Roy told Franklin, resulted from a combination of her being under the influence of a controlled substance and her failure to take prescribed medication for manic-depression.

At the probation revocation hearing, Liggins's attorney asserted hearsay objections to the admission of (1) Officer Smith's body camera footage, which captured Roy making statements to him about Liggins's conduct, and (2) Officer Kryvoruka's testimony to Roy's statement identifying Liggins. The objections were overruled. Relying in part on these challenged hearsay statements, the trial court revoked Liggins's probation and sentenced him to three years in prison, awarding him 234 days of earned presentence credit.

This appeal followed.

## II. DISCUSSION

### A. *The trial court correctly determined Roy's statements in the body camera footage and at the cold show to be admissible under Evidence Code section 1240.*

The body camera footage showed Roy making statements to Officer Smith about Liggins assaulting her. And in his testimony, Officer Kryvoruka told the court that, at the cold show, Roy identified Liggins as the perpetrator. All of these out-of-court statements by Roy, Liggins contends, should have been excluded as hearsay. (Evid. Code, § 1200, subd. (b); see *People v. DeHoyos* (2013) 57 Cal.4th 79, 132.)

The trial court found the challenged statements admissible under Evidence Code section 1240, the hearsay exception for spontaneous statements. To be admissible under Evidence Code section 1240, " '(1) there must be some occurrence startling enough to produce . . . nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' " (*People v. Washington* (1969) 71 Cal.2d 1170, 1176; Evid. Code, § 1240.)

We review the trial court's rulings on hearsay objections for abuse of discretion. (*People v. Merriman* (2014) 60 Cal.4th 1, 65; *People v. Phillips* (2000) 22 Cal.4th 226, 236.) Any preliminary factfinding undertaken to determine whether the requisite elements of the spontaneous statement exception have been met will be upheld if supported by substantial evidence. (*People v. Riccardi* (2012) 54 Cal.4th 758, 831, overruled on other grounds in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)

In attacking each piece of challenged hearsay here—the body camera footage capturing Roy's statements to Officer Smith, as well as Officer Kryvoruka's testimony describing Roy's identification at the cold show— Liggins makes the same argument: According to him, Roy was sufficiently calm when she spoke to Officers Smith and Kryvoruka that her statements cannot be considered excited utterances, and thus do not qualify for admission under the spontaneous statement exception.

We do not agree. The Evidence Code section 1240 analysis in *People v. Stanphill* (2009) 170 Cal.App.4th 61 (*Stanphill*) applies here. *Stanphill*, a probation revocation case, involved a defendant who, while in jail as a condition of probation, allegedly took part in the beating of a fellow inmate by a group of gang members. (*Id.* at pp. 65–66.) As a basis for probation revocation, the defendant was charged with gang-related battery. (*Ibid.*) The only evidence tying him to the attack was the victim's statement to a correctional officer, Deputy Pottorff, while in the jail's medical office shortly after the attack, identifying the defendant in a photo lineup. (*Id.* at pp. 65– 67.)

Citing *People v. Morrison* (2004) 34 Cal.4th 698 (*Morrison*), the *Stanphill* court rejected an argument that the victim was calm and had an opportunity to reflect by the time he was shown the photo lineup in the jail infirmary. (*Stanphill*, *supra*, 170 Cal.App.4th at pp. 72–75.) *Morrison*, the court observed, "upheld admissibility of a police officer's testimony that he responded to a crime scene, saw a victim with apparent gunshot wounds who looked like she might lapse into unconsciousness or even die on the spot, and asked her who did it. She responded by identifying three persons [by name.] [Citation.] The Supreme Court said: '[S]tatements purporting to name or otherwise identify the perpetrator of a crime may be admissible [under section

1240] where the declarant was the victim of the crime and made the identifying remarks while under the stress of excitement caused by experiencing the crime.' "[2] (*Stanphill*, at p. 73.) However, *Morrison* also said, " 'Moreover, where the spontaneous declarant is available as a witness, as [the victim] was here, "the existence and truth of the declaration may be explored in an examination under oath." ' " (*Stanphill*, at p. 74.)

Applying *Morrison* to the probation revocation setting, the *Stanphill* court held that, although the victim who pronounced himself ready to view the photo lineup was not excited while doing so, the circumstances nonetheless indicated the "physical attack on the victim was an event likely to induce stress and excitement" in light of Deputy Pottorff's testimony that he "was upset, breathing heavily and was not calm as he made the identifications." (*Stanphill*, *supra*, 170 Cal.App.4th at p. 74.) We see no reason why a victim's statements about the commission of a recently committed crime against her should be analyzed any differently than an identification, so long as the record supports a finding that the challenged hearsay statements may be deemed

---

[2] *People v. Farmer* (1989) 47 Cal.3d 888, 904–905 (statements of shooting victim in response to questioning of police dispatcher and officer at the scene helped describe the crime by identifying the perpetrator), disapproved on other grounds in *People v. Waidla* (2000) 22 Cal.4th 690, 724, footnote 6; *People v. Anthony O.* (1992) 5 Cal.App.4th 428, 433 (seconds after shooting, victim stated to police officer, " ' "I just been shot. You got the wrong car. It was Sharky from El Sereno." ' "); *In re Damon H.* (1985) 165 Cal.App.3d 471, 474, 476 (in response to his mother's question why his buttocks hurt, crying minor stated, " '[b]ecause Damon put his weenie in my butt' "); *People v. Jones* (1984) 155 Cal.App.3d 653, 659–662 (when a treating physician asked a burn victim, 30 to 40 minutes after his injury, what had happened, victim responded that " '[t]he [person] I live with threw gasoline on me' ").

reliable based on circumstantial indicators of trustworthiness.[3]  " 'The crucial element in determining whether a declaration is sufficiently reliable to be admissible under [the spontaneous statement] exception to the hearsay rule is . . . not the nature of the statement but the mental state of the speaker.' " (*Stanphill, supra*, at p. 74.)

Here, as in *Stanphill*, there were such circumstantial indicators of trustworthiness based on the evidence of Roy's mental state when she made the challenged statements.  First, there was evidence that Roy was extremely upset and speaking very rapidly.  Second, the statements she made described events Roy had perceived first-hand immediately before the cold show and the recorded interview with Officer Smith.  Third, several corroborating circumstances tend to support the trial court's determination that these statements were made excitedly, while Roy was feeling stress.  There is, for example, video evidence showing Roy's demeanor just minutes prior to the cold show.  The statements made to Officer Smith—and the manner in which Roy made them—were also consistent with things the arresting officers themselves could observe and verify, such as Roy's display of umbrage at what Liggins had done and the damage to her car.

To be sure, some of the circumstances here are also consistent with Roy's having calmed down when she spoke, or having failed to take needed medication, or—if her reported later recantation were credited—being in a

---

[3] While the court's focus in *Stanphill* is on the victim's identification of the defendant in a photo lineup, Deputy Pottorff's testimony also included statements about how the offense was committed.  (*Stanphill, supra*, 170 Cal.App.4th at p. 71 ["The trial court heard further testimony from Deputy Pottorff, including that the victim said the Northerners called him over to a corner of the pod, where they knocked him down and started kicking him and punching him (wearing socks on their hands).  The victim identified defendant as one of his attackers."].)

state of intoxication and generally vulnerable to suggestive questioning by police due to her unstable mental state.[4]  Liggins also points out that an out-of-court declarant merely being angry and upset does not satisfy Evidence Code section 1240 because the test is whether she had the ability to deliberate.  (*People v. Ramirez* (2006) 143 Cal.App.4th 1512, 1524–1527; *People v. Raley* (1992) 2 Cal.4th 870, 892–893.)  Faced with two competing interpretations of the record, the standard of review decides the issue.  On appeal, we cannot second-guess the trial court's assessment of the evidence in determining Roy's state of mind.

The court was within its discretion to rule as it did.  Because Liggins does not dispute that the challenged out-of-court statements "narrate[d], describe[d], or explain[ed] an act, condition, or event perceived by" Roy, and because there is substantial evidence in the record to support the court's finding that the statements were "made spontaneously while [Roy] was under the stress of excitement caused by such perception," we see no error.  (Evid. Code, § 1240; *People v. Brown* (2003) 31 Cal.4th 518, 540; *People v. Saracoglu*, *supra*, 152 Cal.App.4th at pp. 1587–1590.)

## B. *The admission of Roy's hearsay statements violated Liggins's due process rights.*

In this case, as in *Stanphill*, the victim who made the challenged out-of-court statements later recanted, did not testify, and there was no finding of unavailability.  (*Stanphill*, *supra*, 170 Cal.App.4th at pp. 67–68, 71.)  There was no showing in *Stanphill*, or in this case, that the state had good cause for the admission of such statements in the absence of an unavailability finding.

---

[4] We see no evidence that the questions put to Roy were leading, self-serving, or otherwise suggestive.  In the absence of such evidence, the fact that Roy's statements were made under questioning does not deprive them of their spontaneity.  (*People v. Saracoglu* (2007) 152 Cal.App.4th 1584, 1590.)

8

(*Id.* at p. 69.)  And there, as here, an objection was made and overruled that the defendant was deprived of his right to confront a witness against him.  (*Id.* at pp. 68–70.)  Thus, "[t]hat the admission of the evidence complies with state evidentiary law does not end the inquiry."  (*Id.* at p. 77.)  There is a second step to the analysis, one posed by the underlying constitutional objection, just as there was in *Stanphill*.  (*Id.* at pp. 78–81.)  We now turn to that constitutional question.  Our review is de novo.  (*Id.* at p. 78.)

### 1. Applicable Principles

"Although probation violation hearings involve the criminal justice system, they are not governed by all the procedural safeguards of a criminal trial.  (*People v. Winson* (1981) 29 Cal.3d 711, 716 (*Winson*), citing *Gagnon v. Scarpelli* (1973) 411 U.S. 778, and *Morrissey v. Brewer* (1972) 408 U.S. 471; see also *People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1198.)  Specifically, the Sixth Amendment's right of confrontation does not apply to probation violation hearings.  (*People v. Johnson* (2004) 121 Cal.App.4th 1409, 1411 (*Johnson*).)  A defendant's right to cross-examine and confront witnesses at a violation hearing stems, rather, from the due process clause of the Fourteenth Amendment.  (*Johnson, supra,* at p. 1411, citing *Black v. Romano* (1985) 471 U.S. 606.)  [Fn. omitted.]  Those confrontation rights, however, are not absolute, and where appropriate, witnesses may give evidence by ' "affidavits, depositions, and documentary evidence." '  (*Winson, supra,* at p. 716; see also *Morrissey v. Brewer, supra,* at p. 489 [the parole revocation 'process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial'].)"  (*People v. Abrams* (2007) 158 Cal.App.4th 396, 400.)

Our Supreme Court held in *People v. Arreola* (1994) 7 Cal.4th 1144, 1159–1160 (*Arreola*) that, to determine whether transcripts of prior testimony may be admitted in probation revocation proceedings consistent with due

9

process, a balancing test must be employed in which the strength of the defendant's interest in confrontation is weighed against the state's countervailing interests as measured by a broad standard of good cause. The good cause standard "is met (1) when the declarant is 'unavailable' under the traditional hearsay standard (see Evid. Code, § 240), (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant." (*Id.* at p. 1160.)

Once this showing is made, *Arreola* and *Winson* call for a case-by-case balancing of interests to determine whether the proffered hearsay may be admitted. "[I]n determining the admissibility of the evidence on a case-by-case basis," the *Arreola* court explained, "the showing of good cause that has been made must be considered together with other circumstances relevant to the issue, including the purpose for which the evidence is offered (e.g., as substantive evidence of an alleged probation violation, rather than, for example, simply a reference to the defendant's character); the significance of the particular evidence to a factual determination relevant to a finding of violation of probation; and whether other admissible evidence, including, for example, any admissions made by the probationer, corroborates the former testimony, or whether, instead the former testimony constitutes the sole evidence establishing a violation of probation." (*Arreola, supra,* 7 Cal.4th at p. 1160; see also *Winson, supra,* 29 Cal.3d at p. 719 ["The issue of whether

10

former testimony may be utilized in lieu of a witness' personal appearance is best resolved on a case-by-case basis."].)[5]

## 2. To Determine Whether There Is a Due Process Right to Confrontation, a Case-by-case Balancing of Interests Analysis Is Required

*Stanphill* saw no need for any showing of good cause or balancing of interests.  Disagreeing with an "apparent concession" from the People to the contrary, the *Stanphill* court held that, where a proffered hearsay statement qualifies for admission under Evidence Code section 1240 as an excited utterance, the defendant's due process rights are "automatically satisf[ied]." (*Stanphill, supra,* 170 Cal.App.4th at p. 81.)  *Arreola*, it concluded, was distinguishable because neither that case nor any of the others requiring a balancing of interests involved evidence admissible under a hearsay exception.  (*Id.* at p. 79.)  It considered the question an open one, and answered it in favor of the People where the hearsay exception at issue is the one for spontaneous statements.  (*Id.* at pp. 79–80.)  Respectfully, we do not agree with that reading of the law.  In our view, *Arreola* is controlling.

Although documentary evidence may be admitted at a probationary hearing consonant with due process so long as there is a showing of reliability

---

[5] The Ninth Circuit requires the application of a nearly identical due process balancing test when evaluating claimed deprivation of the right to confrontation when testimonial hearsay is proffered in final hearings to revoke supervised release.  (*United States v. Comito* (9th Cir. 1999) 177 F.3d 1166, 1171 ["The weight to be given the right to confrontation in a particular case depends on two primary factors:  the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence. . . . '[T]he more significant particular evidence is to a finding, the more important it is that the releasee be given an opportunity to demonstrate that the proffered evidence does not reflect "verified fact." ' . . . So, too, the more subject to question the accuracy and reliability of the proffered evidence, the greater the releasee's interest in testing it by exercising his right to confrontation."].)

(*People v. Maki* (1985) 39 Cal.3d 707, 709 [allowing admission of printed invoice signed by the defendant]), that rule is limited in its application.  In *Arreola* the Supreme Court rejected the contention that there is a generally applicable rule of admissibility for prior testimony upon a showing of "sufficient indicia of reliability."  (*Arreola, supra,* 7 Cal.4th at p. 1156.)  While it is possible to say categorically that there is no significant utility to a defendant's confrontation right when a document that simply records data is involved—since a document cannot be cross-examined or its demeanor observed—the same cannot be said of former testimony (e.g., *Winson, supra,* 29 Cal.3d at p. 717; *Arreola, supra,* at pp. 1156–1157) or other evidence offered as a substitute for live testimony (e.g., *Shepherd, supra,* 151 Cal.App.4th at pp. 1197, 1201–1202 [testimony of probation officer recounting statements by program administrator about defendant's alcohol use]).

That is why case-by-case consideration is necessary.  Under a due process analysis, the importance of a defendant's confrontation right will vary with the circumstances.  Because any determination of minimum due process requirements in the context of probation revocation must be flexible, there will be cases where the confrontation right must give way to the state's countervailing interests in presenting hearsay.  But it is contrary to the California Supreme Court's holding in *Arreola*, in our view, to treat Evidence Code section 1240 as an automatically applicable proxy for compliance with due process minima.  Where the prosecution offers an out-of-court statement as a substitute for live testimony, there will always be *some* value to the defendant's right to confront the speaker.  Whether, in the circumstances, that right is so essential as to overcome the state's showing of good cause for

12

offering hearsay can only be determined by situational weighing of the *Arreola* balancing factors.

### 3. Reliability Is But One Factor To Be Considered in *Arreola* Balancing

The *Stanphill* court grounds its rule of per se constitutionality for excited utterances on what it describes as the unique reliability of such evidence.

"We believe spontaneous statements under section 1240 are a special breed of hearsay exception," *Stanphill* explains. (*Stanphill*, *supra*, 170 Cal.App.4th at p. 81.) According to the *Stanphill* court, " '[t]he theory of the spontaneous statement exception to the hearsay rule is that since the statement is made spontaneously, while under the stress of excitement and with no opportunity to contrive or reflect, it is *particularly* likely to be truthful. . . . Unlike other hearsay exceptions in which the unavailability of a witness makes it "necessary" to resort to hearsay as a weaker substitute for live testimony (5 Wigmore, Evidence (Chadbourn ed. 1974) § 1420, p. 251), the spontaneous statement exception involves a "necessity" of a different sort: "[T]hat we cannot expect, again, or at this time, to get *evidence of the same value* from the same or other sources" (*id.* at § 1421, p. 253, italics in original) and "[t]he extrajudicial assertion being better than is likely to be obtained from the same person upon the stand, a necessity or expediency arises for resorting to it." (6 Wigmore, Evidence, *op. cit. supra,* § 1748, p. 199.)' " (*Ibid.*)

As an exegesis on a point of hearsay law, what the *Stanphill* court says here cannot be gainsaid. But as a matter of due process analysis, we do not find it persuasive. It conflates the backstop reliability screening that ultimately determines the admissibility of evidence offered under Evidence Code section 1240 with the constitutional question whether a defendant is entitled to subject such evidence to the ultimate test of reliability—the

crucible of cross-examination and face-to-face confrontation in the courtroom. There can be no better illustration of the importance of this, we think, than in cases where the out-of-court declarant is alleged to have recanted, which is what we have here. We do not doubt there are compelling reasons that what Roy told Officers Kryvoruka and Smith ought to be accepted as the truth, but before suffering a loss of his liberty on the strength of these statements, Liggins was entitled to confront her with evidence that she made contradictory statements on a later occasion.

It is undisputed that the out-of-court statements from Roy on the body camera footage and at the cold show were admitted for their truth in lieu of live testimony. Had the issue presented here arisen at a criminal trial, these hearsay statements likely would be considered testimonial. (*Davis v. Washington* (2006) 547 U.S. 813, 829–831 [domestic violence victim's statements during interrogation by officers responding to the scene of the offense where there was no ongoing emergency].) This case is no different. (*People v. Shepherd, supra*, 151 Cal.App.4th at p. 1201 [out-of-court statements made by program administrator that defendant violated his probation by consuming alcohol admitted in violation of *Arreola* and *Winson*].) While the federal due process clause does not "command" that testimonial hearsay must *always* be subjected to adversarial testing by cross-examination and face-to-face confrontation, as the Sixth Amendment does in the context of evidence presented at trial (*Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*)), the paradigm shift brought about by *Crawford* is relevant to the treatment of testimonial hearsay wherever a constitutionally protected right of confrontation is at stake.

14

*Crawford*, it will be recalled, overruled *Ohio v. Roberts* (1980) 448 U.S. 56 (*Roberts*). Before *Crawford* was decided, state hearsay law often drove the Sixth Amendment analysis in confrontation clause cases involving testimonial hearsay, and *Roberts* was the avatar of that approach. Under *Roberts*, the availability of the Sixth Amendment right of confrontation was, in effect, dictated by the evidence concept of reliability. (*Roberts*, *supra*, at p. 66 [hearsay from an unavailable witness is admissible over a Sixth Amendment objection only if it bears adequate " 'indicia of reliability' "; "[r]eliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception"].) But "[r]eliability is an amorphous, if not entirely subjective, concept," the *Crawford* court explained. (*Crawford*, *supra*, 541 U.S. at p. 63.) And because "[t]here are countless factors bearing on whether a statement is reliable" (*ibid.*), *Crawford* held that the *Roberts* framework of analysis "is so unpredictable that it fails to provide meaningful protection from even core confrontation violations." (*Ibid.*)

In cases involving testimonial hearsay, we think there is no better justification for tying the availability of the due process right of confrontation to hearsay law than there is for the Sixth Amendment right. By doing so, *Stanphill* adopts the analytical framework of cases dating from the era when *Roberts*, *supra*, 448 U.S. 56 held sway.[6] But the foundation for that approach was fundamentally undermined in *Crawford*. Arguably, we recognize, application of the *Arreola* balancing of interests test to spontaneous statement hearsay in the context of probation revocation is itself inconsistent with

_____

[6] See *White v. Illinois* (1992) 502 U.S. 346 (hearsay admissible under the excited utterance exception automatically complies with Sixth Amendment); *United States v. Inadi* (1986) 475 U.S. 387 (statement admissible under the co-conspirator exemption automatically complies with the Sixth Amendment).

*Crawford*'s rationale because it simply trades one form of uncertainty for another. But even if that is so at some level, it is a form of uncertainty our Supreme Court chose in *Winson* and *Arreola* by establishing a case-by-case balancing test for the admissibility of hearsay offered in lieu of live testimony.

Because reliability bears directly upon the "significance of the particular evidence [proffered] to a factual determination relevant to a finding of violation of probation" (*Arreola*, *supra*, 7 Cal.4th at p. 1160), it certainly has a place in the case-by-case weighing of interests required by *Arreola*. But it is only one of several factors to be weighed, and it must not be assigned dispositive weight in all cases to the exclusion of other factors—which is what *Stanphill* does by creating a categorical test that turns solely on Evidence Code section 1240. While, unquestionably, excited utterances may be uniquely valuable as a form of hearsay, that does not mean they must be treated as effectively irrebuttable. "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty." (*Crawford*, *supra*, 541 U.S. at p. 62.)

At the revocation hearing in this case, there was no showing of Roy's unavailability or of good cause for the admission of hearsay from her in lieu of live testimony. Here on appeal, the Attorney General does not argue that a showing of good cause could have been made; nor does he contend that, had there been such a showing, it would have outweighed Liggins's right to confront Roy. And he makes no attempt to argue lack of prejudice, under any standard. Because prejudice is uncontested, the error in admitting the challenged statements requires reversal.

## III. DISPOSITION

The trial court's finding of a probation violation is reversed. The case is remanded for further proceedings consistent with this opinion.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
TUCHER, J.

17

Trial Court:            City & County of San Francisco Superior Court

Trial Judge:            Honorable Donna Little

Counsel for Defendant   Elizabeth Richardson-Royer,
and Appellant:          by appointment of the First District Court of Appeal
                        under the First District Appellate Project

Counsel for Plaintiff   Xavier Becerra, Attorney General
and Respondent:         Lance E. Winters, Chief Asst. Attorney General
                        Jeffrey M. Laurence, Sr. Asst. Attorney General
                        Linda M. Murphy, Deputy Attorney General
                        Nanette Winaker, Deputy Attorney General

A156843

18