# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,
v.
DONTRAE RENAY GRAY,
Defendant and Appellant.

S269237

Second Appellate District, Division Two
B302236

Los Angeles County Superior Court
MA065662

August 14, 2023

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

Justice Groban filed a concurring opinion.

Opinion of the Court by Guerrero, C. J.

We granted review in this matter to determine whether hearsay that qualifies as a spontaneous statement under Evidence Code section 1240 is always admissible at a probation revocation hearing without consideration of the balance of relevant interests. The Court of Appeal in this case concluded that, because the statements at issue fell within a firmly rooted hearsay exception, they automatically satisfied the minimum due process requirements necessary for their admission into evidence. According to that court, it was not necessary to balance defendant's confrontation interests against any countervailing interests of the government. We conclude that the Court of Appeal erred. We therefore reverse the court's judgment and remand the matter for further proceedings consistent with this opinion.

## I. BACKGROUND

In September 2015, defendant Dontrae Renay Gray pleaded no contest to one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and admitted that he personally inflicted great bodily injury in the commission of the offense (*id*., § 12022.7, subd. (a)). The trial court imposed a seven-year prison sentence, suspended execution of that sentence, and placed defendant on formal probation for five years. As a condition of probation, defendant was required to obey all laws.

At approximately 8:00 a.m. on March 30, 2019, while defendant was still on probation, police officers received a 911 call from a woman reporting that someone was "trying to break" and "kick . . . in" the door of a residence. Police arrived at the residence approximately four minutes later and encountered the caller, N.S., at the front of the residence. Officers observed damage to the wooden front door. Two officers went to the rear of the residence, located defendant, and detained him there. After the officers had taken defendant into custody, another officer entered the residence and spoke with N.S. in the living room. N.S. appeared frightened and was breathing heavily. She had several bruises or red marks on her arms and a small scratch on her cheek.

A body-worn camera worn by one of the officers captured N.S.'s statements regarding the incident. N.S. was recorded stating that she and defendant had been dating for approximately two months, and that she had called the police twice the previous day because defendant had refused to leave the residence, where N.S. cared for a disabled woman. N.S. reported that the police had responded to both calls and had told defendant to leave after the second call. N.S. said that when she awoke the next morning and checked her phone, she saw that defendant had been calling her. When N.S. was assisting the woman, N.S. heard defendant yelling at her from the back door. N.S. recounted that she had told defendant that she was not going to open the door and that he was "always hitting [her] and everything else." N.S. told the officer that defendant then went to the front of the residence, opened the screen door with a key he had stolen, and kicked in the front door. N.S. relayed that defendant then entered the residence and started "punching [her] everywhere" and "stomping [her] out." She stated that

defendant tried to punch her approximately 20 times, mainly on her arms, and that she fell to the ground. She had visible injuries from defendant's assault and reported that she was in pain.

Defendant was arrested and charged with inflicting corporal injury upon a person in a dating relationship (Pen. Code, § 273.5, subd. (a)) and residential burglary (*id.*, § 459). The prosecution filed a motion requesting that defendant's probation be revoked based on the same incident.

N.S. subsequently recanted in part. A few days after the incident, N.S. informed a police detective that she had told police officers that defendant had hit her only because she was mad at defendant and wanted him out of her house. N.S. averred that she was injured by falling backward after defendant kicked the front door open, and not by defendant directly. N.S. also told the prosecutor that she had previously been "lying about some things."

N.S. did not appear at defendant's criminal trial despite proper service of a subpoena and the court's issuance of a body attachment order. The prosecution sought to admit N.S.'s statements as recorded on the body-worn camera video, but the trial court ruled that the statements were testimonial and therefore inadmissible under the confrontation clause of the Sixth Amendment to the United States Constitution (U.S. Const., 6th Amend.) as construed in *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*). The prosecution then announced that it was unable to proceed and the court granted defendant's motion to dismiss the criminal proceeding.

The trial court held a probation revocation hearing several weeks later. Defendant again objected that the admission of the

video containing N.S.'s statements violated his Sixth Amendment rights under *Crawford* as well as his due process rights under the Fourteenth Amendment. The trial court ruled that the Sixth Amendment applied only in criminal proceedings and therefore did not apply at a probation violation hearing. The court then ruled that N.S.'s statements within the first seven minutes of the video qualified as spontaneous statements under Evidence Code section 1240. Without making an express finding of good cause for not securing N.S.'s live testimony at the revocation hearing, the court admitted N.S.'s recorded statements. It then found that defendant violated his probation and imposed the previously suspended sentence of seven years' imprisonment.

Defendant appealed from the order revoking his probation, and the Court of Appeal affirmed. (*People v. Gray* (2021) 63 Cal.App.5th 947 (*Gray*).) The Court of Appeal acknowledged that N.S.'s statements were testimonial under *Crawford* and therefore inadmissible at defendant's criminal proceeding (*id.* at p. 949), but found that consideration irrelevant in determining whether the statements were admissible at defendant's probation revocation hearing (*id.* at pp. 956–957).[1] The Court of Appeal held that hearsay that qualifies as a spontaneous statement under Evidence Code section 1240 automatically satisfies the minimum due process

---

[1]    The parties did not dispute that N.S.'s statements are testimonial under *Crawford*. Accordingly, we accept the parties' agreement on this point. We express no opinion on whether the facts here establish the foundation for a spontaneous statement under Evidence Code section 1240, or the circumstances under which a spontaneous statement might qualify as testimonial for *Crawford* purposes.

requirements applicable at probation revocation hearings. (*Gray*, at p. 949.) It rejected defendant's argument that, before such spontaneous statements may be admitted, the trial court must make a finding of good cause to dispense with cross-examination, and also find that this good cause outweighed defendant's need for confrontation. (*Id.* at pp. 953–955.)

As the Court of Appeal in this case recognized (*Gray*, *supra*, 63 Cal.App.5th at p. 949), there is a split of authority regarding the prerequisites for admitting spontaneous statements in probation revocation hearings. Specifically, courts are divided over whether an additional showing, beyond satisfaction of the criteria for spontaneous statements set out in Evidence Code section 1240, is required to protect a probationer's due process rights in this context. (Compare *People v. Liggins* (2020) 53 Cal.App.5th 55, 66 (*Liggins*) [requiring good cause for not allowing confrontation and application of a balancing test that weighs probationer's confrontation rights against government's countervailing interests] with *People v. Stanphill* (2009) 170 Cal.App.4th 61, 81 (*Stanphill*) [finding spontaneous statements are automatically admissible at probation revocation hearing without any further showing of good cause or application of a balancing test].) We granted review to resolve this conflict.

## II. DISCUSSION

Defendant contends the Court of Appeal erred in holding that a hearsay statement that comes within the spontaneous statement exception to the hearsay rule automatically satisfies a probationer's constitutional due process right of confrontation and is automatically admissible at a probation revocation hearing. To resolve this issue, we first examine the due process-

based right to confrontation in revocation hearings recognized by the United States Supreme Court and this court, and the conflicting decisions of the Courts of Appeal that have addressed this question.

## A. The Due Process Right to Confrontation in Probation Revocation Hearings

In conducting a probation revocation hearing, a trial court exercises its discretion to "revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their supervision, or has subsequently committed other offenses, regardless of whether the person has been prosecuted for those offenses." (Pen. Code, § 1203.2, subd. (a).) The facts supporting a probation revocation must be proved by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447 (*Rodriguez*).)

It is well established that neither parole nor probation revocations are part of a criminal prosecution, and thus "the full panoply of rights due a defendant in [a criminal] proceeding does not apply." (*Morrissey v. Brewer* (1972) 408 U.S. 471, 480 (*Morrissey*) [parole hearings]; see *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 782 (*Gagnon*) [probation hearings]; *People v. Winson* (1981) 29 Cal.3d 711, 716 (*Winson*) [citing *Morrissey*'s holding that a parolee is not entitled to the same protections as a defendant in a criminal prosecution].)[2] That said, "[p]robation

---

[2] The Supreme Court extended the same due process guarantees outlined in *Morrissey* to probation revocation hearings in *Gagnon, supra,* 411 U.S. at page 782. Like parole,

revocation, like parole revocation, . . . does result in a loss of liberty." (*Gagnon*, at p. 782.)  Therefore, "[i]t is fundamental that both the People and the probationer or parolee have a continued post-conviction interest in accurate fact-finding and the informed use of discretion by the trial court.  The probationer or parolee's concern is 'to insure that his liberty is not unjustifiably taken away and the [People's] to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community.' " (*Winson*, at p. 715.)

A defendant during a probation revocation hearing has no *Sixth Amendment* right to confront witnesses.[3]  (See U.S. Const., 6th Amend. ["In *all criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him" (italics added)].)  But *due process* principles protect a defendant's interests even at a revocation hearing, providing the defendant "the right to confront and cross-examine adverse

---

probation "arises after the end of the criminal prosecution." (*Morrissey*, *supra*, 408 U.S. at p. 480.)  Because the same rules apply to both probationers and parolees (*Winson*, *supra*, 29 Cal.3d at p. 716), we refer to both types of revocation hearings in this opinion.  For ease of reference, we also refer at times to the subject of a revocation hearing as a defendant.

[3]     The Sixth Amendment right to confrontation applies only to testimonial statements. (*Michigan v. Bryant* (2011) 562 U.S. 344, 354, citing *Crawford*, *supra*, 541 U.S. at p. 68; *People v. Cage* (2007) 40 Cal.4th 965, 981 (*Cage*).)  A statement made in the course of a police interrogation is testimonial "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Davis v. Washington* (2006) 547 U.S. 813, 822.)

witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." (*Morrissey*, *supra*, 408 U.S. at p. 489; see *Black v. Romano* (1985) 471 U.S. 606, 611–612 (*Black*) [reaffirming the minimum due process procedures set forth in *Morrissey* and *Gagnon*].)[4] These minimum requirements of due process, the *Morrissey* court concluded, would vindicate the shared "interest in not having parole revoked because of erroneous information" and "a further interest in treating the parolee with basic fairness." (*Morrissey*, at p. 484; see also *id.* at p. 484, fn. 12 [" 'the principles of fundamental justice and fairness would [appear to] afford the parolee a reasonable opportunity to explain away the accusation of a parole violation' "].)

These due process rights are not absolute. The United States Supreme Court has explained that, in the revocation setting, "the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (*Morrissey*, *supra*, 408 U.S. at p. 489; see also *id.* at p. 490 ["We have no thought to create an inflexible structure for parole revocation procedures"].) The high court reiterated in *Gagnon*: "While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey*

---

[4] The array of requirements compelled by due process for probation revocation hearings include: "(1) written notice of claimed violations, (2) disclosure of adverse evidence, (3) the right to confront and cross-examine witnesses [unless the hearing officer specifically finds good cause for not allowing confrontation], (4) a neutral and detached hearing board, and (5) a written statement by the fact finders as to the evidence relied on and the reasons for revocation." (*Rodriguez, supra*, 51 Cal.3d at p. 441, citing *Morrissey, supra*, 408 U.S. at p. 489.)

intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." (*Gagnon*, *supra*, 411 U.S. at p. 783, fn. 5.)

While it is clear that due process protects a probationer's right to confront and cross-examine adverse witnesses absent a showing of good cause (*Morrissey*, *supra*, 408 U.S. at p. 489; *Gagnon*, *supra*, 411 U.S. at p. 786), the high court has not yet specified the showing necessary to establish good cause. Our case law provides some guidance, however.

This court first addressed the admissibility of hearsay evidence in a probation revocation hearing in *Winson*, *supra*, 29 Cal.3d 711. Relying on *Morrissey* and *Gagnon*, we held that the transcript of a witness's testimony from a preliminary hearing was improperly admitted at a revocation hearing in the absence of a showing of the witness's unavailability or other good cause. (*Id*. at pp. 713–714, 717.) We recognized that the right of confrontation in revocation hearings is not absolute and "may be denied if the trier-of-fact finds and expresses good cause for doing so," as may occur when the witness is "legally unavailable" or is at risk of harm if he or she were to appear. (*Id*. at p. 719.) Similarly, we added, there may be circumstances where it is " 'appropriate' " for witnesses to "give evidence by document, affidavit or deposition." (*Ibid*.) We concluded that "[t]he issue of whether former testimony may be utilized in lieu of a witness'[s] personal appearance is best resolved on a case-by-case basis." (*Ibid*.) Applying these principles to the facts before us, we determined in *Winson* that the preliminary hearing transcript had been improperly admitted because "the testimony at issue was that of the sole percipient witness to the alleged [probation] violation, a finding of no legal unavailability

was made in the underlying proceedings in which the charges were then dismissed, no additional evidence was introduced which established the witness'[s] unavailability, and the court made no specific finding of good cause for denying the right to confront and cross-examine." (*Ibid*., italics omitted.)

In *People v. Maki* (1985) 39 Cal.3d 707 (*Maki*), we considered whether the good cause requirement applied to documentary evidence submitted at a revocation hearing. (*Id*. at p. 709.) There, the prosecution offered copies of a car rental invoice with the defendant's name and signature, and a hotel receipt bearing his name, to establish that the defendant violated the terms of his probation by traveling out of state. (*Id*. at pp. 709, 716.) After concluding that no hearsay exception applied to the evidence in question, we examined "whether the court could nonetheless properly consider the documents in determining whether to revoke [the] defendant's probation" without making a finding of good cause. (*Id*. at pp. 713–714.)

We concluded that "documentary hearsay evidence which does not fall within an exception to the hearsay rule may be admitted if there are sufficient indicia of reliability regarding the proffered material," even if the trial court makes no finding of good cause to deny the right to confront and cross-examine witnesses. (*Maki, supra*, 39 Cal.3d at p. 709.) Applying this standard, we found that although the issue was "close" (*id*. at p. 716), the documentary evidence was sufficiently reliable to allow for its admission into evidence (*id*. at pp. 716–717). In concluding the car rental invoice was reliable, we explained: "If the invoice were simply printed and filled out by an unidentified hand and devoid of defendant's signature, our conclusion would be that it alone, or even accompanied by the hotel receipt [bearing the defendant's name], would be insufficient to find a

violation of probation. However, the identification of defendant's signature on the printed invoice and the fact that it is an invoice of the type relied upon by parties for billing and payment of money, lead us to find it sufficient here." (*Id.* at p. 717, fn. omitted.)

Most recently, in *People v. Arreola* (1994) 7 Cal.4th 1144 (*Arreola*), we rejected the argument that *Maki* had impliedly overruled *Winson*. (*Id.* at pp. 1156–1157.) We reaffirmed that a transcript of a witness's preliminary hearing testimony is inadmissible at a revocation hearing absent a showing of good cause for dispensing with the requirement of live testimony. (*Id.* at pp. 1148, 1159.) We reiterated that a trial court must determine "on a case-by-case basis" whether former testimony is admissible at a revocation hearing, with the court ascertaining whether a "showing of good cause . . . has been made" and further considering "other circumstances relevant to the issue" of the statement's admission. (*Id.* at p. 1160.)

Our decision in *Arreola* provided a detailed description of the case-specific balancing process that governs a court's analysis. We stated that "[t]he broad standard of 'good cause' is met (1) when the declarant is 'unavailable' under the traditional hearsay standard [citation], (2) when the declarant, although not legally unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant." (*Arreola*, *supra*, 7 Cal.4th at pp. 1159–1160.) We further explained that the showing of good cause for dispensing with the requirement of live testimony must be evaluated in the context of "other circumstances relevant to the issue, including the purpose for which the evidence is offered (e.g., as substantive

evidence of an alleged probation violation, rather than, for example, simply a reference to the defendant's character); the significance of the particular evidence to a factual determination relevant to a finding of violation of probation; and whether other admissible evidence, including, for example, any admissions made by the probationer, corroborates the former testimony, or whether instead the former testimony constitutes the sole evidence establishing a violation of probation." (*Id.* at p. 1160.) We noted that "[s]everal federal circuit courts have adopted a similar approach, balancing the defendant's need for confrontation against the prosecution's showing of good cause for dispensing with confrontation." (*Id.* at p. 1160, citing *U.S. v. Martin* (9th Cir. 1993) 984 F.2d 308, 311, *U.S. v. Bell* (8th Cir. 1986) 785 F.2d 640, 643.)

In reaching this result, we clarified that our holding in *Maki* pertained only to the admission of *documentary* evidence in revocation hearings. (*Arreola*, *supra*, 7 Cal.4th at pp. 1156–1157.) We pointed out the "evident distinction between a transcript of former live testimony and the type of traditional 'documentary' evidence involved in *Maki* that does not have, as its source, live testimony." (*Id.* at p. 1157.) We also noted that, after *Winson*, "the United States Supreme Court has reaffirmed, rather than retreated from, the *Morrissey-Gagnon* requirements and specifically the requirement that the probationer at a revocation hearing be 'entitled to cross-examine adverse witnesses, unless the hearing body specifically finds good cause for not allowing confrontation.'" (*Id.* at p. 1158, quoting *Black*, *supra*, 471 U.S. at p. 612.)

### B. Case Law Concerning the Due Process Right to Confrontation as Pertaining to Spontaneous Statements

A spontaneous statement is a statement that "[p]urports to narrate, describe, or explain an act, condition, or event perceived by the declarant" and "[w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.) Absent another basis for exclusion, a spontaneous statement may be considered as evidence at a criminal or civil trial, notwithstanding its hearsay character. (*Ibid.*)

As previously noted, the Courts of Appeal are divided on the question of whether a showing of good cause for not allowing confrontation (*Morrissey, supra,* 408 U.S. at p. 489; *Gagnon, supra,* 411 U.S. at p. 786) and application of *Arreola*'s balancing test (*Arreola, supra,* 7 Cal.4th at p. 1160) are required before statements that come within the spontaneous statement exception to the hearsay rule may be admitted at a probation revocation hearing.

In *Stanphill, supra,* 170 Cal.App.4th 61, the Court of Appeal considered whether *Arreola*'s balancing test applies to the admission of spontaneous statements at a revocation hearing. There, the trial court revoked the defendant's probation following a hearing in which the court admitted the victim's hearsay statements made to law enforcement officers, identifying the defendant as one of his assailants. (*Id.* at pp. 65–67.) The Court of Appeal affirmed, holding that spontaneous declarations under Evidence Code section 1240 "are a special breed of hearsay exception which automatically satisfy a probationer's due process confrontation/cross-examination rights without the court having to find good cause for the

13

witness's absence under *Arreola* or perform the [federal] balancing test." (*Stanphill*, at p. 81.)

The Court of Appeal in *Liggins*, *supra*, 53 Cal.App.5th 55 disagreed with *Stanphill*'s holding that spontaneous statements are categorically admissible at a revocation hearing. In *Liggins*, the victim told police officers that the defendant had physically attacked her during an argument. (*Id.* at p. 60.) After the defendant was apprehended nearby, the victim identified the defendant as the person who had assaulted her. (*Ibid.*) The victim subsequently recanted and failed to appear at the defendant's probation revocation hearing. (*Ibid.*) At that hearing, the trial court revoked the defendant's probation after admitting as spontaneous statements the victim's statements to the police officers recounting the defendant's conduct as well as her subsequent identification of the defendant. (*Ibid.*)

The Court of Appeal reversed. (*Liggins*, *supra*, 53 Cal.App.5th at p. 70.) Although it agreed that the victim's out-of-court statements constituted spontaneous statements, the appellate court found it "contrary to the California Supreme Court's holding in *Arreola* . . . to treat Evidence Code section 1240 as an automatically applicable proxy for compliance with due process minima." (*Id.* at p. 67.) The *Liggins* court reasoned that the importance of a defendant's due process-based confrontation right in the context of probation revocation will vary with the circumstances, and determining when the state's interest outweighs a defendant's right to confrontation can be determined only "by situational weighing of the *Arreola* balancing factors." (*Id.* at pp. 66–67.)

The Court of Appeal below sided with *Stanphill* and held that spontaneous statements categorically satisfy the minimum

due process requirements applicable at revocation hearings because of their inherent reliability. (*Gray*, *supra*, 63 Cal.App.5th at p. 949.)

## C. We Reject a Categorical Approach Which Requires the Admission of All Spontaneous Statements Without Any Further Showing

The Attorney General asserts that the particular reliability and unique nature of spontaneous statements make them categorically admissible under the due process clause, without requiring a further finding of good cause or a balancing of interests under *Arreola*. The Court of Appeal below likewise concluded that satisfaction of the criteria within Evidence Code section 1240 "is enough by itself to achieve the purpose and function of the due process guarantees applicable to probation revocation hearings." (*Gray*, *supra*, 63 Cal.App.5th at p. 954.) We reject this categorical approach, and instead reaffirm *Arreola*'s case-by-case analysis as applicable here.

A categorical approach — which would allow even testimonial spontaneous statements to be admitted at probation revocation hearings without any case-by-case consideration of the reasons for not allowing confrontation — is inconsistent with this court's precedent and that of the United States Supreme Court. As we have explained, the high court has held that due process entitles parolees and probationers certain "minimum requirements," including "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." (*Morrissey*, *supra*, 408 U.S. at p. 489; see *Gagnon*, *supra*, 411 U.S. at p. 782.) Consistent with these minimum due process protections, we have held that the transcript of a witness's preliminary hearing testimony cannot be introduced in lieu of

the witness's live testimony " 'in the absence of the declarant's unavailability or other good cause' " (*Arreola, supra,* 7 Cal.4th at p. 1148; see also *Winson, supra,* 29 Cal.3d at p. 719), with the presence or absence of good cause to be determined on a case-by-case basis (*Arreola*, at p. 1160; *Winson*, at p. 719).

The balancing test we adopted allows trial courts to examine the government's showing of good cause, and to weigh a defendant's confrontation rights against the government's countervailing interests. It is a comprehensive, holistic approach and no single factor is dispositive.[5]

Fundamentally, trial courts must balance the defendant's interests in confronting a hearsay declarant against the government's showing of "good cause," that is to say, the government's countervailing interests in presenting the evidence without the declarant's presence. (*Arreola, supra,* 7 Cal.4th at p. 1160.) Keeping with the flexible nature of due process, *Arreola* did not articulate fixed rules regarding what trial courts must consider in conducting this balancing. We did, however, identify several circumstances that should be taken into consideration when weighing a defendant's confrontation rights against the government's countervailing interests.

---

[5] We acknowledge that, in *Arreola*, we referred to "the showing of good cause *that has been made*." (*Arreola, supra,* 7 Cal.4th at p. 1160, italics added.) To the extent this phrasing could be construed as requiring a threshold showing of good cause *before* proceeding to a separate balancing of interests, the question was not before us, and " '[i]t is axiomatic that cases are not authority for propositions not considered.' " (*People v. Avila* (2006) 38 Cal.4th 491, 566; cf. *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal. 4th 97, 107 [clarifying prior decision to the extent it could be construed as speaking "too broadly" on an issue that was not previously before the court].)

Among them, as "the significance of the particular evidence to a factual determination" needed to make a violation determination increases, so does the importance of the probationer's confrontation right. (*Ibid*.) Similarly, if no "other admissible evidence" corroborates the statements at issue and the statements the government seeks to introduce instead "constitute[] the sole evidence establishing a violation of probation," a defendant's right to confrontation is heightened. (*Ibid*.) Applying this framework, it follows that the reliability of a particular statement *could* — but not necessarily *must* — defeat a defendant's right to confront and cross-examine a declarant at a revocation hearing.

The Attorney General urges us to hold that "[t]he unique value of [spontaneous statements under Evidence Code section 1240] gives rise to 'good cause' per se for its admission, regardless of the availability of the declarant." We decline to do so. This court has previously recognized that spontaneous statements, "although not necessarily more reliable or accurate, are more likely to represent ' "the unreflecting and sincere expression of one's actual impressions and belief." ' " (*People v. Lucas* (2014) 60 Cal.4th 153, 269.) Yet we have not previously held that spontaneous statements are so reliable that they *categorically* outweigh a defendant's due process right to confront and cross-examine a witness about such expressions of belief. Nor is such a blanket rule necessary. Trial courts can evaluate the reliability of the statements in applying *Arreola*'s balancing test. (See *Arreola*, *supra*, 7 Cal.4th at p. 1157.) Because our adopted framework already allows courts to give due consideration to a spontaneous statement's reliability, along with other relevant circumstances, we reject the position of the Attorney General and the Court of Appeal below that the

admission of evidence under Evidence Code section 1240 *always* comports with a defendant's due process right to confront and cross-examine witnesses at a probation revocation hearing.[6]

Moreover, this balancing framework is consistent with a due process-based right to confrontation in the probation context. The framework affords probationers a meaningful opportunity to confront and cross-examine witnesses in appropriate circumstances "to assure that the finding of a [probation] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [probationer's] behavior." (*Morrissey*, *supra*, 408 U.S. at p. 484.) It is also consistent with the flexible character of the due process principles that give rise to a probationer's confrontation rights here. (See *id*. at p. 481 ["due process is flexible and calls for such procedural protections as the particular situation demands"].) The "touchstone of due process" is "fundamental fairness." (See *Gagnon*, *supra*,

---

[6] We do not disagree that the reliability of evidence is an important factor in determining the strength of a defendant's confrontation right at a probation revocation hearing. But we decline to hold that it is dispositive in all cases. As the Oregon Supreme Court stated when addressing a similar question: "The presumed reliability of an 'excited utterance' is, certainly, a factor that will weigh in favor of admission over a defendant's objection, and, even under [a] balancing [test], such evidence is likely to be admitted in most cases. However, we do not see a reason to completely eliminate consideration of other factors that might lead to a different conclusion." (*State v. Martin* (2022) 370 Or. 653, 669–670 [522 P.3d 841, 853–854], fn. omitted; accord, *Liggins*, *supra*, 53 Cal.App.5th at p. 69 [concluding that reliability "has a place in the case-by-case weighing of interests required by *Arreola*," but "it is only one of several factors to be weighed, and it must not be assigned dispositive weight in all cases to the exclusion of other factors"].)

411 U.S. at p. 790.) As the United States Supreme Court has noted of due process, " '[i]ts application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case.' " (*County of Sacramento v. Lewis* (1998) 523 U.S. 833, 850.)

The remaining arguments advanced by the Attorney General and the Court of Appeal below also do not persuade us to abandon a balancing process in favor of a blanket rule of admissibility for testimonial spontaneous statements. Both reason that it would be incongruous to provide probationers *greater* confrontation rights than afforded to defendants in criminal trials. The Attorney General contends "confrontation rights at revocation hearings must be more flexible than at criminal trials and should yield particularly to permit the admission of highly trustworthy forms of evidence that would promote the reliability of factfinding." The Court of Appeal below similarly noted that it "would make no sense" for the "standard for admitting hearsay in probation revocation hearings" to "be more onerous than the standard for admitting hearsay at trial." (*Gray*, *supra*, 63 Cal.App.5th at p. 955.)

But the *Arreola* standard as applied here today does not give probationers greater rights than criminal defendants. Testimonial statements by a nontestifying declarant may be admitted against a defendant in a criminal trial only when the declarant is unavailable and was previously subject to cross-examination (*Crawford*, *supra*, 541 U.S. at pp. 55–56, 68), regardless of the existence of a hearsay exception. At a revocation hearing, however, it is possible that testimonial statements falling within a hearsay exception could nonetheless be admitted when the government's interests override the defendant's confrontation rights under the specific

circumstances of the case. In other words, the right to confront witnesses exists as a procedural due process safeguard at a probation revocation hearing, but it may give way to a showing of good cause (*Morrissey, supra,* 408 U.S. at p. 489) and a balancing of all relevant facts in a given case (*Arreola, supra,* 7 Cal.4th at pp. 1159–1160). No such balancing process applies to testimonial statements against a defendant in a criminal trial. In short, our decision here does not conflict with *Morrissey,* or this court's precedent, by providing probationers with *greater* rights than those afforded to criminal defendants.

We are also unpersuaded that we should not adopt a balancing test here because, as the Attorney General notes, *Arreola* was "a case in which no exception to the hearsay rule applied whatsoever," whereas this case involves spontaneous statements under Evidence Code section 1240. The Court of Appeal below similarly attempted to distinguish *Winson, Maki,* and *Arreola* on the ground that each case "involved statements that were *inadmissible* under the rules of evidence." (*Gray, supra,* 63 Cal.App.5th at p. 954, italics added.) It is true that we were not previously asked to apply a balancing test to evidence that was otherwise admissible under a hearsay exception. But it does not necessarily follow that we should recognize a categorical exception to the balancing test whenever a hearsay exception applies, regardless of all other considerations. For the reasons outlined *ante,* we reject such a categorical approach for spontaneous statements under Evidence Code section 1240.[7]

---

[7] As noted, we have accepted, without further analysis, the parties' agreement that the statements at issue here constitute

Both the Court of Appeal and the parties before us have addressed whether the United States Supreme Court's *Crawford* opinion impacts our analysis here. As previously noted, in *Crawford*, the high court held that testimonial statements by a declarant who does not appear at trial are inadmissible against the defendant in a criminal prosecution unless the declarant is unavailable as a witness and the defendant had a prior opportunity to cross-examine the declarant. (*Crawford, supra,* 541 U.S. at pp. 68–69.) *Crawford* established a new framework for analyzing confrontation clause claims. (See *Cage, supra,* 40 Cal.4th at p. 969.) Before *Crawford*, hearsay evidence was admissible if the witness was unavailable and the statements had adequate " 'indicia of reliability,' " i.e., they fell within a "firmly rooted hearsay exception" or bore "particularized guarantees of trustworthiness." (*Ohio v. Roberts* (1980) 448 U.S. 56, 66, overruled in *Crawford, supra,* 541 U.S. 36.) After *Crawford*, the focus is no longer on whether the hearsay statement bears adequate indicia of reliability, but rather on whether the statement is considered testimonial in nature under *Crawford* and its progeny. (*Crawford*, at pp. 68–69 ["Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation"]; see *Cage*, at p. 979.) In other words, generalized indicia of reliability cannot save a testimonial hearsay statement from being excluded under the Sixth Amendment right to confrontation. Any such

*testimonial* evidence that comes within the spontaneous statement exception. We do not decide what due process-based confrontation rights, if any, apply to the admission of *nontestimonial* evidence that comes within a hearsay exception.

testimonial statement by a witness is inadmissible unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, *regardless* of whether such statement is deemed reliable by the court. In sum, a reliability-based approach is no longer the touchstone of a confrontation clause analysis. (*Hemphill v. New York* (2022) ___ U.S. ___ [142 S.Ct. 681, 690].)

Although a defendant's right to confrontation at a probation revocation hearing stems from the due process clause rather than the Sixth Amendment's confrontation clause, we are not persuaded that *Crawford* and its progeny have no relevance here. *Crawford* underscores the importance of confrontation, as enshrined in the Sixth Amendment, when the People offer out-of-court testimonial statements against a defendant in a criminal trial. At probation revocation hearings, where a defendant's liberty interest is also at stake, courts similarly should consider the importance of a defendant's confrontation rights, albeit under the due process clause and the framework prescribed by *Morrissey* and its progeny, including our case law. Just as *Crawford* rejected a regime premised on the perceived reliability of the hearsay evidence in question, we see no persuasive reason to regard the fact that testimonial hearsay falls within a firmly rooted exception to the hearsay rule as the sole consideration relevant to the evidence's admissibility in a probation revocation hearing. When dealing with testimonial statements at a probation revocation hearing, it is appropriate to weigh the defendant's confrontation rights against the government's reasons for not producing the declarant. While a defendant's interest in confrontation may be diminished by the reliability of testimonial hearsay evidence, reliability alone does not render such evidence admissible in revocation proceedings.

22

We therefore decline to require trial courts to rely solely on the consideration of reliability in determining whether a defendant's due process right to confrontation at a revocation proceeding is protected.

We emphasize that a defendant's due process right to confront testimonial witnesses against him is not absolute; a defendant's interests can be outweighed by the government's substantial showing of good cause for not making the witness available at the revocation hearing, by sufficient independent evidence corroborating the hearsay evidence, and by other indicia of reliability including the fact that the statements fall within a firmly rooted exception to the hearsay rule. What cannot be done, however, is reducing the analysis to a single determination that hinges solely on whether a statement qualifies as a spontaneous statement under Evidence Code section 1240.[8]

Because the Court of Appeal in this case did not evaluate whether N.S.'s statements were admissible under *Arreola*, or, if the statements should not have been admitted, whether that error was prejudicial, we remand the matter to the Court of Appeal to decide those questions in the first instance.[9]

---

[8] We disapprove *People v. Stanphill, supra*, 170 Cal.App.4th 61, to the extent it is inconsistent with this holding.

[9] We note that the Court of Appeal apparently viewed the prosecution's unsuccessful attempts to secure N.S.'s presence as "insufficient to establish 'good cause.'" (*Gray, supra*, 63 Cal.App.5th at p. 951.) As we have explained, witness unavailability as described in *Arreola, supra*, 7 Cal.4th at page 1160, is neither a threshold requirement nor a dispositive factor in determining whether *Morrissey*'s "good cause for not allowing

## III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with this opinion.


**GUERRERO, C. J.**


**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

---

confrontation" requirement has been met. (*Morrissey, supra,* 408 U.S. at p. 489.)

PEOPLE v. GRAY

S269237


Concurring Opinion by Justice Groban


At a probation revocation proceeding, a trial court must weigh the probationer's interest in confrontation against the government's good cause for not producing a witness. (See generally maj. opn., *ante*, at pp. 5–12; see also *People v. Arreola* (1994) 7 Cal.4th 1144, 1159–1160 (*Arreola*).) I write separately to emphasize that, as part of this balancing test set forth in *Arreola*, the potential for emotional or mental harm to the witness can be a relevant factor bearing on the state's demonstration of good cause. *Arreola* specifically provides that "[t]he broad standard of []'good cause' is met . . . when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, *mental or emotional harm*) to the declarant." (*Arreola*, at pp. 1159–1160, italics added, citing Cohen et al., The Law of Probation and Parole (1983 ed.) § 9.32, pp. 466–467; see Cohen, at p. 467 [noting that "the term 'harm' " includes not only physical harm, but may include "mental harm, such as emotional trauma to a rape victim"].)

Here, the People sought to revoke defendant Dontrae Renay Gray's probation based, in part, on an allegation that he inflicted corporal injury upon a person in a dating relationship. (See maj. opn., *ante*, at p. 3.) I express no view regarding the factual record underlying that allegation, nor do I have an opinion as to whether good cause can be established on remand. I note simply that, as a general matter, although not all alleged victims of domestic violence are similarly situated, there are

1

often unique challenges associated with procuring victim testimony in domestic violence cases. (See Lininger, *Prosecuting Batterers After Crawford* (2005) 91 Va. L.Rev. 747, 768 ["Victims of domestic violence are more prone than other crime victims to recant or refuse to cooperate after initially providing information to police. Recent evidence suggests that 80 to 85 percent of battered women will recant at some point"]; Beloof & Shapiro, *Let the Truth Be Told: Proposed Hearsay Exceptions to Admit Domestic Violence Victims' Out of Court Statements As Substantive Evidence* (2002) 11 Colum. J. Gender & L. 1, 3 ["Non-cooperation by recantation or failure to appear at trial is an epidemic in domestic violence cases"]; *People v. Brown* (2004) 33 Cal.4th 892, 899 (*Brown*) [describing the complications presented in domestic violence cases, including " 'victims who refuse to testify, who recant previous statements, or whose credibility is attacked by defense questions on why they remained in a battering relationship' "]; see also Katirai, *Retraumatized in Court* (2020) 62 Ariz. L.Rev. 81, 97 ["[C]ourts still report that many survivors do not appear for criminal hearings or refuse to cooperate with prosecutors"].)

Domestic violence victims, by testifying, may be facilitating their partner or family member's incarceration. This, for some, may prove emotionally or mentally harmful. (See *Brown, supra,* 33 Cal.4th at p. 899 [" 'A fundamental difference between family violence and other forms of violence (such as street violence) is that family violence occurs within ongoing relationships that are expected to be protective, supportive, and nurturing. The ties between victim and victimizer often are the strongest emotional bonds, and victims frequently feel a sense of loyalty to their abusers' "].) Our prior case law and today's decision make clear that, "in appropriate

circumstances” (*Arreola, supra,* 7 Cal.4th at p. 1160), trial courts may consider the potential emotional and mental harm that alleged victims may suffer if they are compelled to testify.


**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Gray

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 63 Cal.App.5th 947
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S269237
**Date Filed:** August 14, 2023

---

**Court:** Superior
**County:** Los Angeles
**Judge:** Renée F. Korn

---

**Counsel:**

William J. Capriola, under appointment by the Supreme Court, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., Michael Katz, Scott A. Taryle and Teresa A. Reed Dippo, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

William J. Capriola
Attorney at Law
P.O. Box 1536
Sebastopol, CA 95473
(707) 829-9490

Teresa A. Reed Dippo
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3896